**Alecia LOCOCO, Plaintiff,**

v.

**Mark BARGER, et al., Defendants.**

**Civil Action No. 95–154.**

United States District Court,
E.D. Kentucky.

March 24, 1997.

Catherine M. Stevens, Brown, Todd & Heyburn, Lexington, KY, Robert Y. Gwin, Barbara W. Menefee, John T. Lovett, Brown, Todd & Heyburn, P.L.L.C., Louisville, KY, for Alecia Lococo.

James M. Burd, Allen Button, R. Allen Button, Williams & Wagoner, Louisville, KY, for Mark Barger.

James M. Burd, Allen Button, Williams & Wagoner, Louisville, KY, Stuart E. Alexander, III, Tilford, Dobbins, Alexander & Buckaway, Louisville, KY, for Sherman Neace, Perry County Fiscal Court, and Perry County, Kentucky.

James M. Burd, R. Allen Button, Williams & Wagoner, Louisville, KY; for Freddie Combs, Johnny Blair, and Denny Ray Noble.

Stuart E. Alexander, III, Tilford, Dobbins, Alexander & Buckaway, Louisville, KY, for

Freddie Combs, Johnny Blair, and Denny Ray Noble.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

Before the Court are cross motions for summary judgment. [Record Nos. 38, 40]. The defendants have filed supplemental memoranda in support of their motion for summary judgment [Record Nos. 68 & 70]. The plaintiff has responded [Record Nos. 72 & 73]. This matter is now ripe for consideration. Having reviewed the record and the memoranda submitted by the parties, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

At the time of the incidents giving rise to this action, Mark Barger (Barger) was serving as Perry County Attorney.[1] Alecia Lococo (Lococo) was hired by Barger as Perry County Assistant Attorney. Her term of employment lasted from February 1994 to September 1994.

Lococo asserts that she was wrongfully discharged on September 9, 1994. Specifically, she alleges that Barger had indicated that she was doing a good job, and that the only reason that he was firing her was because she was a woman. [Lococo deposition, p. 17]. Lococo surreptitiously recorded the conversation with Barger and cites certain statements therein as direct evidence of discriminatory animus.

The defendants counter that Lococo was not discharged because she was a woman, but because she was having an affair with Denny Fugate while she was married to Harry Watts. [Barger deposition, p. 10]. In addition, they allege that Watts broke into the home of Fugate and put a gun to his head. [Barger deposition, p. 8]. Furthermore, as a result of the affair, they allege that Lococo gave birth to a child. The defendants claim this conduct compelled Barger to fire Lococo. In essence, they assert that Lococo's lifestyle was having a negative impact on the office and that Barger's wife was concerned about Lococo's reputation in the community. [Barger deposition, pp. 8 & 10].

After filing a complaint with the Equal Employment Opportunity Commission and the Kentucky Commission on Human Rights and receiving a right to sue letter, Lococo filed this action. She asserts claims under the following: (1) Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; (2) Equal Protection Clause of the Fourteenth Amendment by way of 42 U.S.C. § 1983; (3) Kentucky Civil Rights Act, KRS 344.010 et seq.; (4) common law tort of outrageous conduct.

### CONCLUSIONS OF LAW

#### A. Personal Staff Exception to Title VII

■ The defendants primary argument with respect to the claim under Title VII is that Lococo does not fall within the statutory definition of "employee" as set forth in the act and that, therefore, she is not entitled to the protections so afforded. Lococo fails to respond to this argument.

Under Title VII of the Civil Rights Act of 1964, the definition of "employee" is as follows:

The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, **or any person chosen by such officer to be on such officer's personal staff,** or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemptions set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term in-

1. Also included as defendants in this action are Perry County; Sherman Neace (Perry County Judge Executive); the Fiscal Court of Perry County; Johnny Blair (Perry County Magistrate); Freddie Combs (Perry County Magistrate); and Denny Ray Noble (Perry County Magistrate). They are referred to throughout as the defendants. However, where distinctions must be made between the defendants, Defendant Barger will be referred to as Barger and the rest of the defendants will be referred to as Perry County and the Perry County officials.

cludes an individual who is a citizen of the United States.

42 U.S.C. § 2000e(f) (emphasis added). Lococo is not subject to the civil service laws of Kentucky, *see* KRS 15.770(4), and the office of county attorney is an elected position. Thus, whether Lococo falls under the personal staff exception turns on the definition of "personal staff."

Title VII does not define personal staff. However, the Fifth Circuit, when faced with this same issue, put forth six factors "which Courts have found significant in determining whether a complainant falls within the 'personal staff' exception to Title VII's definition of employee." [2] *Teneyuca v. Bexar County*, 767 F.2d 148, 151 (5th Cir.1985). These six factors are as follows:

> (1) [W]hether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Id.*

Having reviewed each of the *Teneyuca* factors, the Court is persuaded that the personal staff exception removes Lococo, as an assistant county attorney, from the definition of employee. First, since by statute, the county attorney appoints and removes assistants, the county attorney has plenary power of appointment and removal. *See* KRS 15.770(1). Second, it appears that an assistant county attorney is accountable only to the county attorney. Third, it is clear that an assistant county attorney would generally represent the county attorney in the eyes of the public. Fourth, the assistant county attorney is under the direction and control of the county attorney pursuant to KRS 69.300. Fifth, an assistant county attorney is just

below the county attorney in the chain of command. And finally, the county attorney and an assistant county attorney have a close working relationship. Thus, having determined that Lococo falls within the personal staff exemption to the definition of employee, the Title VII claim must be dismissed. *See Ramirez v. San Mateo County Dist. Attorney's Office*, 639 F.2d 509, 511–513 (9th Cir. 1981).

### B. Kentucky Civil Rights Act

#### 1. *No Personal Staff Exception Within KRS Chapter 344*

█ Like Title VII, the Kentucky Civil Rights Act, KRS Chapter 344, proscribes certain unlawful employment practices. In fact, the general purpose of the Kentucky act is to provide a means for implementing within the state the policies embodied in the Federal Civil Rights Act of 1964, as amended, as well as other related federal statutes. KRS 344.020(1). It is, therefore, common practice to look to the federal counterpart in construing KRS 344. *See Palmer v. International Ass'n of Machinists*, 882 S.W.2d 117, 119 (Ky.1994) (noting that KRS Chapter 344 was modeled after the federal statute, Title VII of the Civil Rights Act of 1964).

KRS Chapter 344, however, is not the mirror image of Title VII in every respect. The policy statements of the Kentucky act go further than the federal counterpart. The Kentucky act, for example, was implemented to " 'protect ... personal dignity and freedom from humiliation.' " *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 817 (Ky.1992) (quoting KRS 344.020(1)(b)). The federal act has no such policy statement. *Id.* In addition, the Kentucky act goes beyond Title VII in proscribing certain employment practices. To wit, it is a violation of a Kentuckian's civil rights for an employer to discriminate against an individual "because the individual is a smoker or nonsmoker, so long as the person complies with any workplace policy concerning smoking." KRS 344.040(1).

---

**2.** In an unpublished opinion, the Sixth Circuit followed the Fifth Circuit's use of the six factors.

*See Walton v. Michigan*, 918 F.2d 958, 1990 WL 182033 (6th Cir.1990) (unpublished disposition).

The definition of employee under the Kentucky act presents another example in which the acts are dissimilar. It simply states:

"Employee" means an individual employed by an employer, but does not include an individual employed by his parents, spouse, or child, or an individual employed to render services as a domestic in the home of the employer.

KRS 344.030(5). Clearly, the Kentucky definition of employee does not contain the personal staff exception set forth in the federal counterpart. Had the General Assembly intended to include such an exemption, it, presumably, would have done so explicitly. Consequently, the Court declines to borrow the exception from federal law and impose it within the statutory scheme of the Kentucky Civil Rights Act.

### 2. Perry County Is An Employer Under KRS Chapter 344

■ Perry County and the Perry County officials argue that they should be dismissed from this action because they do not fit within the definition of "employer" under KRS 344.030. KRS 344.030(2) defines "employer" as "a person who has eight (8) or more employees within the state in each of twenty (20) or more calendar weeks in the current or preceding calendar year and an agent of such person...." "Person" is defined as "one (1) or more individuals, labor organizations, ... or other legal or commercial entity; the state, any of its political or civil subdivisions or agencies." KRS 344.010(1). Thus, Perry County and its officials, as political subdivisions of the state, are not immune from suit under KRS Chapter 344 and are considered an employer if they employ eight (8) or more persons, one of which is the plaintiff.

Perry County and the Perry County officials contend that Lococo is a state employee, not a county employee, and therefore they are not her employer. No Kentucky case law exists on whether a county attorney and his or her assistants are state or county employees; however, several attorney general opinions address such issue.

It appears that a county attorney is a hybrid position, working for and being paid partly by the state and working for and

being paid partly by the county. See 89 Op. Att'y Gen. 21 (1989). However, each attorney general who has addressed this issue, has determined that although the county attorney functions in a dual role, the county attorney and his or her assistants are constitutionally county officers. See 91 Op. Att'y Gen. 218 (1991) ("To summarize, assistant county attorneys are county employees when hired by an elected county attorney to work for the county...."); KRS 69.210 (describing the duties of a county attorney for the county); see also 92 Op. Att'y Gen. 162 (1992) ("In our opinion, ... the county attorney does not lose his status as a county officer simply by taking on prosecutorial and other duties involving the commonwealth's attorney's office."); 80 Op. Att'y Gen. 341 ("The county attorney is a county constitutional officer.... [and] the assistant county attorney is a statutory county officer...."). Thus, as a county officer, Lococo is an employee of Perry County.

The defendants counter that they cannot be Lococo's employer because they did not hire her or fire her and they have no contract of hire with her. While it is true that Lococo was only hired by Barger, and Perry County and its official did not have any say in the hiring, Barger is still an employee of the county. Thus, even if the County is not considered Lococo's direct employer, Barger would be considered an agent of the county and the county would be considered an employer under KRS 344.030(2).

### 3. Defendant Barger Is Not Individually Liable Under KRS Chapter 344

■ Lococo has sued Barger in both his official and individual capacities. Barger argues that under KRS Chapter 344 he cannot be held liable individually for his alleged discriminatory conduct. Lococo contends that he can, due to the term "agent" within the definition of employer.

As noted above, under KRS 344.030(2)'s definition of employer, the term "agent" is used. Similarly, Title VII, 42 U.S.C. §§ 2000e et seq., and its close counterpart, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., use the

term "agent" in defining employer.[3] Since Kentucky Courts have not directly addressed the meaning of "agent", the Court must once again look to federal law under Title VII to determine whether a supervisor may be held liable in his or her individual capacity under KRS Chapter 344. *See Palmer,* 882 S.W.2d at 119 (noting that KRS Chapter 344 is modeled after Title VII).

Unfortunately, the Sixth Circuit has not directly addressed this issue. In dicta, the Sixth Circuit noted in *Jones v. Continental Corp.,* 789 F.2d 1225, 1231 (6th Cir.1986), that "the law is clear that individuals may be held liable for violations of Section 1981, . . . and as 'agents' of an employer under Title VII. . . . " However, subsequent to *Jones,* the United States District Court for the Eastern District of Kentucky held that Title VII does *not* give rise to individual liability of an agent/supervisor of the employer. *Lowry v. Clark,* 843 F.Supp. 228, 229–30 (E.D.Ky. 1994).

The *Lowry* decision reflects the current trend in the law, wherein a majority of circuits have found *no* individual liability under Title VII or the ADEA.[4] The Courts have determined that the term "agent" under Title VII's definition of employer refers to the respondeat superior liability of the employer, and not individual liability of the alleged discriminator.

> We have recently addressed this very issue of individual liability under Title VII. In *Williams v. Banning,* we held that a supervisor, in his individual capacity, does not fall within Title VII's definition of employer. 72 F.3d 552, 553 (7th Cir.1995).

We reasoned that the term "employer" is a statutory expression of traditional respondeat superior liability. Limits on damages which correspond to the size of the employer reinforce our reading of the statutory scheme. *Id.* Our ruling is seconded by a similar interpretation of "employer" under the Americans with Disabilities Act. *See EEOC v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1279–82 (7th Cir.1995). We apply consistent principles in the instant case. Roberts, sued in his individual capacity, is merely a supervisor and therefore operates without risk of Title VII personal liability.

*Geier v. Medtronic, Inc.,* 99 F.3d 238, 244 (7th Cir.1996).

Since the Sixth Circuit has failed to directly rule on this issue, and since apparently all circuits, which have addressed this issue recently, have found no individual liability, this Court will follow the trend in construing what the Kentucky courts would decide as to this issue. Thus, based on Chapter 344's similarity to Title VII, this Court holds that as Lococo's supervisor, Barger cannot be held individually liable for the alleged discriminatory discharge of Lococo. Accordingly, Lococo shall proceed on her claim under KRS 344.040(1) against Barger in his official capacity, and against Perry County and the Perry County officials in their official capacity.

## C. Lococo's Claim under 42 U.S.C. § 1983

### 1. *Lococo May Bring Both a Title VII claim and a 42 U.S.C. § 1983 Claim*

■ The defendants argue that because Lococo's claim is founded on Title VII, she

---

**3.** Much debate has occurred in the federal circuit courts of appeal over whether the term "agent" allows a supervisor to be sued in his or her individual capacity under Title VII or the ADEA.

**4.** According to this Court's research, all circuits which have directly addressed the issue of individual liability under Title VII, or its close counterpart the ADEA, have found no individual liability for supervisors. *See Geier v. Medtronic, Inc.,* 99 F.3d 238, 244 (7th Cir.1996) (Title VII); *Haynes v. Williams,* 88 F.3d 898, 901 (10th Cir. 1996) (Title VII); *Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996) (ADEA case which looks to no individual liability holding in *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir. 1991) (Title VII)); *Stults v. Conoco, Inc.,* 76 F.3d

651, 655 (5th Cir.1996) (ADEA case which looks to no individual liability holding in *Grant v. Lone Star Co.,* 21 F.3d 649, 653 (5th Cir.) (Title VII), *cert. denied,* 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994)); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 & 1317 (2d Cir.1995) (Title VII); *Gary v. Long,* 59 F.3d 1391, 1399 (D.C.Cir.) (Title VII), *cert. denied,* — U.S. ——, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995); *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510–11 (4th Cir.) (ADEA case looking to Title VII cases), *cert. denied,* 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587–88 (9th Cir.1993) (Title VII), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994).

may not bring an action based on 42 U.S.C. § 1983. *See Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199 (6th Cir.1984). However, *Day* recognizes "an employee may sue her public employer under both Title VII and § 1983 when the § 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution." *Day,* 749 F.2d at 1205. Thus, Lococo's 42 U.S.C. § 1983 claim must be predicated on some federally protected right other than that afforded by Title VII.[5] *See Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir.1993) ("A plaintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant, but a plaintiff can assert a claim under Section 1983 if some law other than Title VII is the source of the right alleged to have been violated."), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994).

In the case at hand, Lococo claims that she has been discriminated against based on her sex in violation of her equal protection rights under the Fourteenth Amendment. Thus, she has stated a "distinct violation of a constitutional right", and she may bring her claim under 42 U.S.C. § 1983. *See Gierlinger v. New York State Police,* 15 F.3d 32, 34 (2d Cir.1994) ("A Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action, so long as the § 1983 claim is based on a distinct violation of a constitutional right); *see also Davis v. Passman,* 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979) ("The equal protection component of the Due Process Clause thus confers on petitioner a federal constitutional right to be free from gender discrimination. . . .").

### 2. Perry County May Be Held Liable Under 42 U.S.C. § 1983

■ A municipality or a local government may be held liable under 42 U.S.C. § 1983 when a plaintiff can show that the right violated stemmed from a custom or policy prescribed by that body politic. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611

(1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may be fairly said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Moreover, the Supreme Court has held that "an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). Thus, if Barger is an authorized decision maker, then Perry County and its officials would be liable for his alleged discriminatory discharge of Lococo. *See Meyers v. City of Cincinnati,* 14 F.3d 1115, 1117–18 (6th Cir.1994).

Since the county attorney has the final authority in the office of the county attorney, especially on whether to hire or fire an assistant county attorney, Barger would be an authorized decision maker for the county in the area of the county attorney's office. *See* KRS 15.770(1) & 69.300. Thus, because Barger is an authorized decision maker, Perry County and its officials may be held liable for Barger's decision to fire Lococo.

### 3. Factual Issues Exist Which Would Preclude Summary Judgment

■ Both parties argue that summary judgment on the 42 U.S.C. § 1983 claim is warranted based on the evidence. Although it is true that this is an unusual case in which the plaintiff can cite to direct evidence of discriminatory intent, the defendants have set forth a legitimate nondiscriminatory explanation for the action taken.

In addition, there is an unusual wrinkle evident in the transcript itself, whereby Barger tells Lococo that he has to fire her because of his wife's jealousy and then says, in essence, it is because she is a woman. He, in fact, tells her to take legal action, and get a court ordered reinstatement which would appease, or at least placate, Barger's wife since he would have no control over the court

---

5. A claim for violation of federally protected rights (under color of law) whether statutory or constitutional is actionable by way of § 1983.

*Maine v. Thiboutot,* 448 U.S. 1, 10, 100 S.Ct. 2502, 2507, 65 L.Ed.2d 555 (1980).

ordered reinstatement. Thus, Lococo's direct evidence that she was fired because she was a woman is not solid. Whether Lococo was fired because she was a woman or only because Barger's wife was jealous and things were being said in the community is for the jury to decide; what is the true reason for her discharge—was it related to Lococo's gender or was it for purely personal reasons?

Furthermore, Lococo's claim of discrimination due to her gender is weakened by the same actor inference, which has been applied in gender discrimination cases under Title VII and would apply here. *Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 464 (6th Cir.1995) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class."), *cert. denied,* —— U.S. ——, 116 S.Ct. 785, 133 L.Ed.2d 736 (1996). Because Barger hired her in the first place, there is an inference that he would not fire her because of her gender.

In sum, then, it appears that the state of the record does not entitle either the defendants or Lococo to summary judgment. The questions here are best tried to a jury.

## D. Qualified Immunity

█ In his supplemental memorandum in support of summary judgment, Barger argues that he is qualifiedly immune. He contends that the law in this area was not clear because technically he thought Lococo was employed "at-will" and thus could be fired for any reason. This argument is without merit.

It is clear that Barger knew that firing Lococo because she was a woman would be discriminatory conduct. He clearly states to her in the taped conversation that "she has a hell of a claim" and that she should take this matter to the EEOC immediately. Based on Barger's own words, it is clear that he is not entitled to qualified immunity. The law is clear that an "at-will" employee cannot be fired for illegal, discriminatory reasons. *See Firestone Textile Co. v. Meadows,* 666 S.W.2d 730, 732–33 (Ky.1983); *see also Southerland v. Hardaway Management Co., Inc.,* 41 F.3d 250, 256 (6th Cir.1994).

## E. Tort of Outrage

In recognizing a claim for intentional infliction of emotional distress, otherwise known as the tort of outrage, Kentucky has adopted the Restatement (Second) of Torts § 46. Comment d states, "Generally the case is one in which the recitation of facts to an average member of the community would arouse resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities...." Restatement (Second) of Torts § 46.

In *Humana v. Seitz,* 796 S.W.2d 1, 4 (Ky. 1990), the Kentucky Supreme Court held that the plaintiff must present affirmative evidence to state a claim for the tort of outrage; belief is not enough. The plaintiff must show that the defendant's conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 3 (quoting Restatement (Second) of Torts §·46, comment d); *see also Pierce v. Commonwealth Life Ins. Co.,* 825 F.Supp. 783 (E.D.Ky.1993), *aff'd,* 40 F.3d 796 (6th Cir.1994).

Since the seminal case of *Craft v. Rice,* 671 S.W.2d 247 (Ky.1984), which recognized the tort, Kentucky courts have taken a restrictive view towards this tort, granting summary judgments for defendants in many cases. In these cases the courts have found that the defendants' acts did not rise to the level of outrageous conduct needed to sustain a claim for this tort. The courts, instead, have found the defendants' conduct to fall into the "insulting, undignified ..." category. *See, e.g., Pierce,* 825 F.Supp. at 789 (defendants called the plaintiff a murderer, rapist, and made other insulting, derogatory remarks); *Humana,* 796 S.W.2d at 3 (plaintiff delivered a stillborn baby, and the nurses told her to "shut-up" and that they would dispose of the baby right there at the hospital).

This trend has continued. In 1994 the Sixth Circuit upheld the district court's decision in *Pierce.* In *Pierce* the defendant's

employee, while demoting the plaintiff, commented to the plaintiff that he "might as well have been a murderer, rapist, or child molester" among other crude, sexually implicit remarks. Construing Kentucky law, the Sixth Circuit found that the defendant's employee's conduct was not outrageous enough to sustain a cause of action against the defendant. The Court held, "[U]nder Kentucky's stringent standards, no reasonable juror could conclude that the company's actions were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Pierce*, 40 F.3d 796, 806 (6th Cir.1994).

Moreover, recently revisiting this tort in the case, *Kroger Co. v. Willgruber*, 920 S.W.2d 61 (Ky.1996), the Kentucky Supreme Court reinforced the Sixth Circuit's finding in *Pierce* by emphasizing that Kentucky still takes a restrictive/limited approach to this tort. The supreme court stressed that "only *outrageous* and *intolerable* conduct" is covered by this tort. *Id.* at 65. In so noting, the court made clear that the actions by the defendant must be clearly offensive and of a harassing nature. The court stated, "Citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action." *Id.*

■ Examining the relevant Kentucky case law, it becomes clear that the conduct alleged is not extreme and outrageous. The conduct here is nowhere near that of a nurse shouting "shut-up" to a woman who had delivered her stillborn child, unassisted, into a bedpan, or a husband who had committed adultery spending the proceeds of checks and other assets during divorce proceedings and then threatening his soon to be ex-wife to achieve a favorable settlement. Kentucky Courts ruled that the conduct described above did not constitute outrageous conduct under Kentucky law. *Humana*, 796 S.W.2d at 3; *Whittington v. Whittington*, 766 S.W.2d 73 (Ky.Ct.App.1989).

Although discharging an employee on the basis of gender may be illegal and reprehensible, a great deal more is required to approach outrageous conduct. Such conduct is bad conduct, but it is not outrageous and intolerable conduct, as defined in Kentucky case law. The record contains nothing which would support a finding of outrageous and intolerable behavior in this matter.

Comment h of the Restatement states,

It is for the court to determine, on the first instance, whether the Defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

Following the precedent set forth above, the court does not find that the nature of the conduct is such that the case should be submitted to the jury. Consequently, the defendants' motion for summary judgment as to the claim for outrageous conduct shall be granted.

Accordingly,

**IT IS ORDERED:**

(1) That the motion of the plaintiff for summary judgment [Record No. 40] be, and the same hereby is, **DENIED;**

(2) That the motion of the defendants for summary judgment [Record Nos. 38, 68 & 70] be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART;**

(3) That the claim pursuant to Title VII be, and the same hereby is, **DISMISSED WITH PREJUDICE;**

(4) That the tort of outrage claim be, and the same hereby is, **DISMISSED WITH PREJUDICE;**

(5) The claim against Barger under KRS Chapter 344 in his individual capacity be, and the same hereby is, **DISMISSED WITH PREJUDICE;**

(6) That this matter shall proceed on the 42 U.S.C. § 1983 equal protection claim and

the claim pursuant to the Kentucky Civil Rights Act, KRS Chapter 344.