Jeff BREWER, Appellant,

v.

Kenneth Gene HILLARD, Appellee.

Consolidated Freightways, Appellant,

v.

Kenneth Gene Hillard, Appellee.

Nos. 1997–CA–001842–MR,
1997–CA–001902–MR.

Court of Appeals of Kentucky.

Aug. 13, 1999.

Discretionary Review Denied by
Supreme Court April 12, 2000.

Daniel Simons, Richmond, for appellant, Brewer.

Joseph Shelton, Atlanta, GA, for appellant, Consolidated Freightways.

William Kenealy, Louisville, for appellee.

Before: COMBS, EMBERTON and GUIDUGLI, Judges.

## OPINION

GUIDUGLI, Judge.

These appeals arise from a jury verdict in favor of appellee, Kenneth Gene Hillard (Hillard) on his claim of intentional infliction of emotional distress against appellant Jeff Brewer (Brewer) and his claim of same-gender hostile environment sexual harassment against appellant Consolidated Freightways Corporation of Delaware (CF). On appeal, Brewer argues that he was entitled to judgment as a matter of law, that the tort remedy of intentional infliction of emotional distress was not available to Hillard, that Hillard's filing of a workers' compensation claim precluded him from filing a tort claim, and that the trial court erred in altering the jury's apportionment of damages. CF argues that the trial court erred in not granting its motion for judgment nowithstanding the verdict (JNOV) in its entirety and that a new trial is warranted due to improper jury instructions and improper apportionment of damages by the jury. We affirm in part and reverse in part.

Testimony at trial established that Hillard was employed by CF as a local deliveryman. Brewer was employed by CF as dispatcher/supervisor on the evening shift, which began around 3:00—4:00 in the afternoon and ended around 12:00—1:00 a.m. Brewer would often work past midnight to finish his work, thus overlapping with the midnight shift. Donna Carter (Carter) was the dispatcher/supervisor on the midnight shift. Hillard often worked evening and midnight shifts because of his low seniority status.

According to Hillard, he initially had no problem with Brewer when he began working as a local deliveryman. After several months, Brewer began calling him sexually explicit names. As time passed, Brewer's conduct became worse. Hillard testified that Brewer would grab his buttocks and comment "why don't you give me some of that ass." Sometimes Brewer would rub his crotch while making lewd comments. There were also several occasions when Brewer made requests for oral and anal sex.

Hillard testified that if other employees were around Brewer would make the comments loudly, but if no one was around he would keep his tone of voice low. At the time the harassment was occurring, Hillard thought Brewer was either homosexual or bisexual. Hillard did admit that

Brewer never intimated that his job would be in jeopardy if he did not comply with his requests.

Hillard testified that he reported Brewer's behavior in graphic detail to Carter in December 1992. At that time Carter made a copy of CF's harassment policy, which hung on a wall in the dispatch office area, and gave it to him. According to CF's harassment policy:

Any incident of harassment, including work-related harassment by any CF MotorFreight personnel or any other person, should be reported promptly so the matter can be investigated and resolved as quickly as possible. Managers or supervisors who receive complaints of harassment should inform their regional human resources manager, or the Human Resources Department in Menlo Park immediately, and if they observe harassing conduct, should act immediately to prevent it from continuing.

A. **Harassment by co-workers.** If employees feel they are being harassed by a co-worker or by an employee of a customer or vendor, they should immediately notify their supervisor or manager. Supervisors and managers are responsible for acting promptly to investigate such complaints.

B. **Harassment by managers or supervisors.** The company emphasizes that employees are not required to complain first to their supervisor if that supervisor is the individual who is harassing the employee. The Human Resources Department is responsible for investigating complaints of harassment by supervisors or managers.

Every complaint of harassment that is reported to the Human Resources Department will be investigated thoroughly, promptly, and in as confidential a manner as is possible, consistent with the Company's obligation to conduct a thorough investigation.

Hillard stated that Carter told him she would report Brewer's conduct to John Barrett (Barrett), CF's terminal manager.

Several days later, Carter allegedly told Hillard that she had reported Brewer's conduct to Barrett, who allegedly said that he did not care what Brewer said as long as the acts were not done on company time. Hillard stated that after hearing what Barrett allegedly said he made no effort to pursue the matter because he felt no one cared. At trial, Carter denied giving Hillard a copy of the harassment policy, denied that Hillard complained to her about Brewer, and denied discussing Brewer with Barrett.

Hillard testified that he was hospitalized for two or three days in March 1993 for heart palpitations. His treating physician, Dr. Gus Bynum (Dr. Bynum) testified that Hillard's problems could be caused by high caffeine intake and stress. Dr. Bynum indicated that Hillard was given medication to control his heart rate. Dr. Bynum's office notes for May 14, 1993, showed that Hillard reported "[l]ots of problems with anxiety and stress; very tense; lots of conflict with dispatcher at work; likes his job but afraid he is going to explode at his boss." Dr. Bynum testified that Hillard never told him he was being sexually harassed at work. On the May 14 visit, Hillard appeared to be very stressed and anxious, but not depressed. At that time Dr. Bynum prescribed Xanax.

Hillard testified that when he returned to work after his hospitalization, Brewer's conduct continued. When he became increasingly upset to the point that his ability to drive was affected, he sought help from Dr. Ben Santa–Teresa (Dr. Santa–Teresa). Dr. Santa–Teresa saw Hillard on May 12, 1993. Dr. Santa–Teresa testified that Hillard complained of job-related stress and appeared to be very nervous and upset. Hillard indicated he was having a fight with management but did not give any details. Dr. Santa–Teresa diagnosed severe depression secondary to job stress, prescribed Xanax and Zoloft, and advised Hillard to stay off work for several weeks. In a letter to CF dated July 8,

1993, Dr. Santa–Teresa indicated that Hillard "strongly believes he is being harrassed [sic] in his job by his supervisor."

Hillard was off work for approximately three weeks after seeing Dr. Santa–Teresa. When he returned to work he filed a workers' compensation claim and ultimately received benefits for the time he missed.

Hillard did not directly report Brewer's behavior to Barrett until August 6, 1993. According to Hillard, the harassment stopped after this meeting and Brewer began behaving like a gentleman.

We will address each of CF's and Brewer's claims separately with the exception of the claims regarding the jury instructions and apportionment of damages. Further facts will be developed where necessary to adequately address the issues raised.

## I. APPEAL OF JEFF BREWER

A. *WAS BREWER ENTITLED TO JUDGMENT AS A MATTER OF LAW ON HILLARD'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS?*

■ The tort of intentional infliction of emotional distress, or outrage, was first recognized in *Craft v. Rice*, Ky., 671 S.W.2d 247 (1984). In that case, the Kentucky Supreme Court adopted the following portion of Section 46 of the *Restatement (Second) of Torts:*

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

■ *Restatement (Second) of Torts,* § 46(1)(1965). In order to recover, the plaintiff must show that defendant's conduct was intentional or reckless, that the conduct was so outrageous and intolerable so as to offend generally accepted standards of morality and decency, that a causal connection exists between the conduct complained of and the distress suffered, and that the resulting emotional stress was severe. *Humana of Kentucky, Inc. v. Seitz,* Ky., 796 S.W.2d 1, 2–3 (1990). An action for outrage will not lie for "petty insults, unkind words and minor indignities"; the action only lies for conduct which is truly "outrageous and intolerable." *Kroger Co. v. Willgruber,* Ky., 920 S.W.2d 61, 65 (1996).

Brewer contends that he was entitled to summary judgment as a matter of law because Hillard failed to satisfy the foregoing elements for the tort of outrage. In reviewing a motion for summary judgment, the record is to be viewed in a light which is most favorable to the non-moving party with all doubts being resolved in his favor. *Steelvest, Inc. v. Scansteel Service Center,* Ky., 807 S.W.2d 476 (1991). Only if "it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor should the motion for summary judgment be granted." *Steelvest,* 807 S.W.2d at 482. In reviewing the record in a light most favorable to Hillard, we are not persuaded that summary judgment was proper in this case.

■ First, it cannot be seriously argued that Brewer's conduct was anything but intentional. Even if we accept Brewer's argument that the purpose behind his conduct was to inject humor in the workplace and not to inflict emotional distress, the tort still lies where his conduct is reckless; i.e., where he intended his specific conduct and either knew or should have known that emotional distress would result. Testimony from other CF employees established that Brewer harbored a strong dislike for Hillard; therefore, the recklessness of his comments is easily seen.

■ As to whether Brewer's conduct was outrageous and intolerable to the point of being actionable, from the evidence produced by Hillard we have no trouble finding that it is. The testimony

at trial showed that Hillard was subjected to frequent incidents of lewd name calling coupled with multiple unsolicited and unwanted requests for homosexual sex. We believe that this case "is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Restatement (Second) of Torts*, § 46, cmt. d (1965). We are aware that the Sixth Circuit recently upheld the dismissal of a tort law claim for outrage coupled with a claim of hostile environment sexual harassment in *Wathen v. General Electric Co.*, 115 F.3d 400 (6th Cir.1997), after finding that the plaintiff failed to produce evidence to show that the conduct was truly outrageous. *Wathen*, 115 F.3d at 407. However, this case differs from *Wathen* in that the conduct complained of here went far past the incidents of "sexual jokes, comments, and innuendos" which were the subject of the complaint in *Wathen*.

■ We also believe that Hillard produced a sufficient amount of evidence to survive a motion for summary judgment on the issue of the causal connection between Brewer's conduct and his emotional distress and the severity thereof. Both Dr. Bynum and Dr. Santa–Teresa indicated in their office notes that Hillard complained of problems with a supervisor at work. Both doctors testified that Hillard was having problems with anxiety and stress. Both doctors felt that Hillard's condition was such that medication was needed to control it. We believe the evidence presented was sufficient to present an issue to the jury as to whether Hillard's stress was caused by Brewer's conduct.

■ In regard to the severity of Hillard's stress, while we agree that the plaintiff in *Willgruber* suffered a more serious reaction to the conduct of his employer than Hillard, the question in that case was whether the trial court erred in not granting Kroger's motion for a directed verdict which requires that the sufficiency of the evidence be considered. *Willgruber*, 920

S.W.2d at 64. The sufficiency of the evidence is not reviewed in summary judgment matters. *Steelvest*, 807 S.W.2d at 480. Based on the foregoing, the trial court did not err in refusing to grant summary judgment on these issues.

**B. *WAS THE REMEDY OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AVAILABLE TO HILLARD?***

■ Brewer contends that the tort of intentional infliction of emotional distress is only a gap-filler tort which is not available when the traditional tort of assault and battery would afford a remedy. In support of his argument, Brewer relies on *Rigazio v. Archdiocese of Louisville*, Ky. App., 853 S.W.2d 295 (1993), where this Court held:

> where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in those instances must be had under the appropriate traditional common law action.

*Rigazio*, 853 S.W.2d at 299.

■ We agree with the trial court's decision on this issue and its distinction of *Rigazio* contained in its opinion and order entered June 24, 1997, on Brewer's motion for JNOV, and adopt the following portion of that order as our own:

> Brewer claims this action for outrageous conduct is not available to Hillard because it was designed to be used only when other torts would not address the Plaintiff's claims. Brewer claims Hillard should have sued for assault, or battery, or both, citing *Rigazio v. Archdiocese of Louisville*, Ky.App., 853 S.W.2d 295 (1993). However, Brewer misses a key element of the *Rigazio* holding.

While it is true the tort of outrage, now intentional infliction of emotional distress, is a "gap-filler" tort intended to provide a remedy when no other tort is adequate, there is a clearly developed paradigm for outrage: when actions or contact is intended only to cause extreme emotional distress in the victim. *Rigazio* at 299.

Battery is a tort which requires an unwanted touching of the victim. Assault requires the threat of touching. Outrage requires conduct intended to cause emotional distress in the victim. Outrage can be done without a touching or even threat of one. It can be done *with* both elements as well, if the intent is to cause extreme emotional distress. The *intent* in the tort of outrage is different from that required in either assault or battery. [Emphasis in original].

Hillard pled outrage. Evidence was presented to the jury. The jury found Brewer's actions were "intended . . . to cause or recklessly cause(d) severe emotional distress." Instruction No. 1, Interrogatory No. 1.

The jury could have believed Brewer "intended only to cause emotional distress" because the evidence in its entirety, as weighed by the jury, supports a belief that Brewer's intent was to harass or intimidate [cite omitted] by sexual embarrassment, rather than to merely touch improperly or threaten improper touch. In fact, Brewer testified he *did not* take any of the actions for sexual gratification. Consequently, the jury was not clearly erroneous to find that Brewer was liable for outrageous conduct, nor was it error to instruct on that tort. [Emphasis in original].

## C. HAVING PURSUED A WORKERS' COMPENSATION REMEDY, IS HILLARD PRECLUDED FROM PURSUING A TORT REMEDY?

■ Brewer contends that having filed a workers' compensation claim for the three weeks he missed work while under Dr. Santa–Teresa's care, Hillard is precluded from maintaining a tort action against him. In making his argument, Brewer relies on the exclusivity provisions of KRS 342.690(1) and *Zurich American Ins. Co. v. Brierly*, Ky., 936 S.W.2d 561 (1997)(holding that if death of employee results from deliberate intent of employer to cause death, employee's dependents can either proceed under Chapter 342 or sue at law). Hillard relies on *Zurich Ins. Co. v. Mitchell*, Ky., 712 S.W.2d 340 (1986), and *General Accident Ins. Co. v. Blank*, Ky.App., 873 S.W.2d 580 (1993), for the proposition that the tort of outrage has been accepted as an exception to the exclusivity provisions of KRS 342.690.

We believe that all of the cases cited by the parties on this argument are distinguishable because they focus on the liability of the employer and/or the employer's compensation carrier for a tort claim arising from a work-related injury. In this case, Hillard's tort claims are raised only in regard to Brewer's conduct, not the conduct of his employer.

Besides providing protection from additional liability to employers, KRS 342.690 extends the same protection to the fellow employees of an injured worker except "in any case where the injury . . . is proximately caused by the willful and unprovoked physical aggression of such employee[.]" KRS 342.690(1). Under KRS 342.700, when a compensable injury has occurred under circumstances in which a party other than the employer is liable,

the injured employee may either claim compensation or proceed at law by civil action against the other person to recover damages, or proceed both against the employer for compensation and the other person to recover damages, but he shall not collect from both. . . . If compensation is awarded . . . the employer, his insurance carrier, the special fund, and the uninsured employer's fund, or any of them, having paid the compensation . . . may recover in his or its own

name or that of the injured employee from the other person in whom legal liability for damages exists[.]

KRS 342.700(1).

In *Russell v. Able*, Ky.App., 931 S.W.2d 460 (1996), this Court used both KRS 342.690(1) and KRS 342.700(1) to hold that an employee who received workers' compensation for an injury caused by the intentional act of a co-employee was not precluded from maintaining an action in tort against the co-employee. The Court held that:

> receipt of benefits is not a bar to filing a civil action against a third party who is legally liable to the injured employee. Further, we have no problem with including within the definition of a third party a fellow employee who fails to fall within the immunity set forth under KRS 342.690.

*Russell*, 931 S.W.2d at 462–463.

The situation before us is analogous to that in *Russell*. Hillard claims that he sustained injury as a result of Brewer's intentional acts. Therefore, the exclusivity provisions of KRS 342.690(1) are not applicable to Brewer and the trial court did not err in allowing Hillard's civil action against Brewer to proceed.

### D. *WERE THE DAMAGES AWARDED BY THE JURY EXCESSIVE?*

■ Brewer argues that the jury's award of $75,000 for emotional distress was excessive, and contends that there was no medical confirmation of the distress Hillard suffered. Brewer would have us review the jury's award under the "first blush" rule as enunciated in *Morrow v. Stivers*, Ky.App., 836 S.W.2d 424, 430 (1992). However, *Morrow* makes it clear that the "first blush" rule is not the proper appellate standard. "Once the issue is squarely presented to the trial judge, who heard and considered the evidence, neither we, nor will the Court of Appeals substitute our judgment on excessiveness for his unless clearly erroneous." *Morrow*, 836 S.W.2d at 431. Having reviewed the rec-ord and the testimony presented, we are not prepared to rule that the trial court abused its discretion in this case.

### II. APPEAL OF CONSOLIDATED FREIGHTWAYS

Following entry of the trial order and judgment, CF moved for JNOV on the grounds that (1) the Kentucky Civil Rights Act does not recognize sexual harassment claims involving the same sex; (2) Brewer's harassment of Hillard was not due to his gender; and (3) CF took prompt action to end the harassment once it was notified. The trial court denied CF's motion, and CF raises the same arguments on appeal.

■ In ruling on a JNOV motion, the trial court is required to consider the evidence in a light most favorable to the party opposing the motion and to give that party every reasonable inference that can be drawn from the record. *Taylor v. Kennedy*, Ky., 700 S.W.2d 415, 416 (1985). The motion is not to be granted "unless there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ." *Taylor*, 700 S.W.2d at 416. On appeal, we are to consider the evidence in the same light. *Lovins v. Napier*, Ky., 814 S.W.2d 921, 922 (1991).

### A. *DID THE FACTS CLEARLY DEMONSTRATE THAT CF RESPONDED ADEQUATELY AND EFFECTIVELY ONCE IT HAD KNOWLEDGE OF BREWER'S CONDUCT?*

■ CF maintains that it was entitled to JNOV because (a) notice to Carter in December 1992 was not sufficient to impute notice to CF; and (2) CF responded with prompt remedial action once Hillard reported Brewer's conduct to Barrett on August 6, 1993. We believe the trial court adequately addressed this issue in its order denying CF's motion for JNOV entered June 24, 1997, and adopt the following portion of that order as our own:

The evidence before the jury was divergent as to when CF was given notice or should have known of the sexual harassment by Brewer toward Hillard. The credibility of the witnesses, and the weight to be given to their testimony is the sole province of the jury unless clearly erroneous.

The jury was asked under Instruction No. 2, Interrogatory No. 7, whether CF *"knew or should have known"* of Hillard's claims that Brewer was sexually harassing him. This standard was set in *Rabidue v. Osceola Refining Co.,* 805 F.2d 611 (6th Cir.1986). It clearly does not require only actual notice to an employer, but also requires due diligence on the employer's part. If an employer can establish the harassment at issue was not foreseeable (See, e.g. *Kauffman v. Allied Signal, Inc.,* 970 F.2d 178 (6th Cir.) cert. den. 113 S.Ct. 831 (1992)), then it can escape liability. [Emphasis in original].

Here, CF did not deny the alleged behavior, but claimed no actual notice until long after the occurrences, and prompt remedial action once it heard of Hillard's complaints. The jury found it was too little, too late.

CF has argued it could not reasonably take action when, although there was a policy in place providing for an avenue to give notice of complaints, none was given until after much of the harassment had already occurred.

CF's policy provided for complaints to be made to a "supervisor", with no further designation. Hillard claimed to have reported the harassment to Donna Carter, a "supervisor." Carter disputed this, but the jury chose to believe Hillard.

In the face of this, CF now argues that Carter, as a "low-level supervisor", is not the "supervisor" intended to receive notice as directed in its policy manual, and that her knowledge, if any, cannot be imputed to CF. It is true, that after Hillard complained to John Bar-rett, a higher ranking "supervisor", CF took commendable steps to address the problem. However, the jury believed that Carter, as a "supervisor", was in a position to further report the harassment, and that the company should have known about it from other sources such as Mr. Philbeck, Hillard's co-worker on the dock, and that Hillard had done all he was required to do based on CF's own policy.

The Court cannot find, as a matter of law, that notice to Carter was insufficient to provide notice to CF. The question of whether CF knew or should have known of the harassment is a question of fact for the jury under *Kentucky* law, which has a more stringent standard for taking questions from the jury than does federal law. *See Steelvest [sic], Inc. v. Scansteel Serv. Ctr.,* Ky. 807 S.W.2d 476 (1991). Nor can the Court say the jury's findings on this issue are clearly erroneous, and therefore a JNOV or new trial is not appropriate on this issue. [Emphasis in original].

**B. *WAS BREWER'S CONDUCT UNLAWFUL UNDER THE KENTUCKY CIVIL RIGHTS ACT?***

■ CF contends that Hillard's claims are not actionable under the Kentucky Civil Rights Act(the Act) because the Act will not support a claim for same-gender sexual harassment. We note that the Act, as embodied in KRS Chapter 344, proscribes certain unlawful employment practices in much the same way as its federal counterpart, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et. seq.). *Lococo v. Barger,* 958 F.Supp. 290, 293 (E.D.Ky.1997). In fact, KRS 344.020(1)(a) provides that the general purpose of Chapter 344 is "[t]o provide for execution within the state of the policies embodied in the Federal Civil Rights Act of 1964 as amended[.]" As such, it is accepted practice to look to federal case law construing Title VII in construing KRS 344. *Lococo,* 958 F.Supp. at 293. *See also Palmer v. International Association of Machinists and*

*Aerospace Workers, AFL–CIO,* Ky., 882 S.W.2d 117 (1994) (looking to federal case law to construe the term "employer" as used in KRS Chapter 344). As the issue of whether same-gender sexual harassment is actionable under the Act is a question of first impression before this Court, we will look to federal law for guidance in this area.

As both sides have pointed out, the issue of whether same-gender sexual harassment is actionable under Title VII has been decided differently among the several federal circuits with no clear consensus. However, the United States Supreme Court has recently addressed this issue in *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

Oncale, a male worker on an oil platform, was subjected to numerous sex-related, humiliating actions by fellow male workers. He filed suit against his employer alleging that he was discriminated against by his employer by virtue of his sex. A panel of the Fifth Circuit Court of Appeals affirmed the District Court's dismissal of his case according to the precedent of *Garcia v. Elf Atochem North America,* 28 F.3d 446 (5th Cir.1994), which held that same-gender harassment was not actionable under Title VII. *See Oncale v. Sundowner Offshore Services, Inc.,* 83 F.3d 118 (5th Cir.1996).

In reversing the Fifth Circuit, the Supreme Court held that nothing in Title VII would bar a claim of discrimination simply because the plaintiff and the alleged harasser are the same sex. *Oncale,* 523 U.S. at 75, 118 S.Ct. at 1001–1002, 140 L.Ed.2d at 207. In so holding, the Court stated:

We see no justification in the statutory language or our precedents for a categorical rule excluding same-sex harassment claims from the coverage of Title VII. As some courts have observed, male-on-male sexual harassment in the workplace was assuredly not the principal evil Congress was concerned with when it enacted Title VII. But statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed. Title VII prohibits "discriminat[ion] ... because of ... sex" in the "terms" or "conditions" of employment. Our holding that this includes sexual harassment must extend to sexual harassment of any kind that meets the statutory requirements.

*Id.* at 998, 118 S.Ct. at 1002, 140 L.Ed.2d at 207. Although KRS 244 and Title VII are not identical, we see no reason to depart from *Oncale* and hold that a claim for same-gender sexual harassment is cognizable under the Kentucky Civil Rights Act.

C. *DID HILLARD PROVE THAT BREWER HARASSED HIM BECAUSE OF HIS SEX?*

■ Although the Supreme Court ruled in *Oncale* that same-gender sexual harassment cases are cognizable, the Court made it very clear that the plaintiff must show that the conduct constituted discrimination because of sex. "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] ... because of ... sex." *Id.* at 998, 118 S.Ct. at 1002, 140 L.Ed.2d at 208, citing 42 U.S.C. § 2000e–2(a)(1). [Emphasis deleted]. This does not mean that the plaintiff must show that his harasser was homosexual or "motivated by sexual desire" in order to prevail. *Id.* As the Court indicated, "[t]he critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* [Citation omitted]. CF contends that Hillard failed to show that Brewer harassed him because of his sex.

According to *Oncale:*

[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." [citation omitted]. In same-sex (as in all) harassment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. A professional football player's working environment is not severely or persuasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field—even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Id.* at 998, 118 S.Ct. at 1003, 140 L.Ed.2d at 208–209. After reviewing the videotape of the trial, we find that there was sufficient evidence to uphold the jury's finding that Hillard was harassed because of his sex. There was no evidence which indicated that Brewer treated women in the work place the same way he treated Hillard. Brewer's conduct went far past "simple teasing or roughhousing among members of the same sex" and that it clearly constituted behavior which a reasonable person in Hillard's surroundings would find to be severely hostile or abusive. *Id.* While we recognize that the atmosphere of the night shift on an all-male loading dock is far removed from the niceties of a typical office, we believe that Brewer's behavior was extremely offensive even in those surroundings.

### III. THE JURY INSTRUCTIONS AND THE APPORTIONMENT OF DAMAGES

Under Instruction No. 1, Interrogatory 3, of the jury instructions used at trial, the jury found that Brewer's conduct was outrageous and intolerable, thus finding for Hillard on his claim of intentional infliction of emotional distress. Under Instruction No. 2, Interrogatory No. 7, the jury found that CF knew or should have known about Brewer's conduct, thus finding for Hillard on his sexual harassment claim.

Instead of being asked to determine individual damages for the conduct of each defendant, the jury was instructed as follows in Instruction No. 3, Interrogatory No. 8:

You should now determine and award the Plaintiff Hillard for such mental and emotional distress as you believe from the evidence he has suffered as a direct result of the Defendant Jeff Brewer's and/or Defendant Consolidated Freightway's [sic] conduct toward him and should now proceed to Instruction No. 4.

Pursuant to this instruction the jury awarded Hillard $75,000.

Instruction No. 4 provided:

You have determined in Interrogatory No. 3 and Interrogatory No. 7 that both Defendant Jeff Brewer and Defendant Consoldiated Freightways are liable to Plaintiff Hillard for his emotional distress. You must now determine from the evidence what percentage of the total damages was attributable to each of the defendants. (In determining the percentages, you shall consider both the nature of the conduct of each party and the extent of the causal relation between each party's conduct and the injury claimed).

Pursuant to this instruction the jury found Brewer 10% liable and CF 90% liable. In accordance with the jury's verdict, the trial court entered a trial order and judgment

finding Brewer liable for compensatory damages in the amount of $7,500 and CF liable for the remaining $67,500.

■ The last issue raised by CF in its motion for JNOV was that the damages were improperly apportioned between CF and Brewer. CF argued that the evidence did not support an award of $75,000 for mental distress and that "apportioning 90% of that award to CF was unlawful since CF has only vicarious liability due to its respondeat superior status with Defendant Brewer, the actual perpetrator." The trial court held that the apportionment under Instruction 4 was improper in its order denying CF's motion for JNOV entered on June 24, 1997, but on different grounds:

Plaintiff Hillard claimed in his Complaint that he was the victim of sexual harassment, or *in the alternative,* outrageous conduct by Defendant Brewer. Under *Lowry,*[1] Defendant CF stands in the shoes of Brewer because of respondeat superior. However, Defendant Brewer stands alone on the outrageous conduct, now viewed as intentional infliction of mental distress by Kentucky's Courts.

Under the sexual harassment claim, Brewer admitted and the jury found he committed the acts complained of. CF has vicarious liability for those acts. If CF could escape liability by prevailing on the notice element, then there would be no Defendant against whom liability could be held, which is the scenario described and rationalized in *Lowry* which "may leave victims of employment discrimination without a remedy in certain instances where their employers can escape liability by showing that a supervisor's harassing actions were not foreseeable." *Lowry* at p. 231. The *Lowry* Court found this justifiable because Congress did not intend individuals to be held liable, and loss of a remedy does not justify creating such liability by judicial fiat.

However, CF did not meet its burden with the jury on the notice element. In that event, being vicariously liable or directly liable, CF is liable for the *entire* damage award, and is not entitled to *any* apportionment of the award against it.

The jury also found Brewer liable under the Plaintiff's alternative theory of the case, intentional infliction of mental distress. Had the jury found *no* liability for sexual harassment, either because they found none to exist or because there was no Defendant who could be held responsible as described above, then Brewer would be responsible for the entire damage amount under the individual claim.

In determining the Plaintiff's damages, the jury was instructed to determine Hillard's damages for mental and emotional distress "as a direct result of the Defendant Jeff Brewer's and/or Defendant Consolidated Freightway's [sic] conduct toward him …" (Instruction No. 2, Interrogatory No. 8). It fixed the damage award at $75,000.00. The Court then erroneously instructed the jury to apportion the damages between the Defendants in Instruction No. 4.

This instruction was erroneous because each Defendant is liable for the damages in their entirety, being two parties "acting in concert" in the fullest sense of the word, since Brewer's actions in the intentional infliction claim are the same actions for which CF is vicariously liable or failed to prevent. The two Defendants are therefore jointly and severally liable to the Plaintiff. Because the entire liability *could* have been avoided on the sexual harassment claim, the Plaintiff was entitled to an Instruction on the alternative liability claim under tort law. [Emphasis in original].

On appeal, Brewer argues that the apportionment of damages under Instruction No. 4 was proper in accordance with KRS

1. *Lowry v. Clark,* 843 F.Supp. 228 (E.D.Ky. 1994). [Footnote added].

**14**

411.182, which compels apportionment between tortfeasors in tort actions. CF argues that the initial apportionment was improper, and that when the trial court realized the instruction was improper its remedy of joint and several liability was also erroneous and that a new trial should have been ordered.

Our review of the jury instructions in this case shows that it is not apportionment under Instruction No. 4 which is improper, but rather Instruction No. 3, Interrogatory 8. Under the terms of that instruction, the jury was instructed to determine the total amount of damages sustained by Hillard as a result of Brewer's outrageous conduct *and* CF's failure to stop Brewer's conduct once it knew or should have known of the harassment. As CF points out, Hillard presented two separate and distinct claims of injury; one for intentional infliction of emotional distress against Hillard and one against CF for the sexual harassment by Brewer. Because there were two separate and distinct claims against two tortfeasors, there should have been two damage instructions: one for the damages resulting from the sexual harassment and one for the damages resulting from intentional infliction of emotional distress. However, no one made a specific objection to Instruction No. 3, Interrogatory No. 8. Therefore, we are stuck with what, in essence, is a total award of $75,000 for two distinct causes of action.

In the original jury instructions, it appears that Instruction No. 4 was an attempt to divide responsibility for the total amount of damages between Brewer for his outrageous conduct and CF for its negligence in failing to stop it. Thus, we interpret the jury's response to mean that Brewer was liable for $7,500 for his outrageous conduct and CF was liable for $67,500 for its negligence in failing to stop Brewer once it was put on notice of his behavior.

We fail to see how the trial court could find that Brewer and CF are two parties which acted in concert. While we understand the trial court's logic that it is Brewer's conduct that CF is ultimately liable for under the sexual harassment claim, that in and of itself does not make them joint tortfeasors for which joint and several liability must follow. Hence, the trial court erred in reversing the original apportionment of the jury in favor of joint and several liability.

We disagree with CF's argument that it is entitled to a new trial due to the instruction on apportionment. As we have stated before, it is Instruction No. 3, Interrogatory No. 8, which is improper, not Instruction No. 4 dealing with apportionment.

CF's CR 59.01 arguments are equally unappealing. Our review of the record does not show that the damages awarded against CF were excessive, given under the influence of prejudice, or in disregard of the evidence or jury instructions. It is obvious that the jury felt that CF had notice of Brewer's conduct and that CF's negligent failure to stop Brewer's conduct was more egregious. Nor do we believe that the jury's verdict was unsupported by the record as there were several witnesses who testified that they told Barrett about Brewer's conduct.[2]

Having considered the parties' arguments on appeal, the trial court's order is reversed to the extent that the trial court found Brewer and CF to be jointly and severally liable for Hillard's damages and this matter is remanded to the trial court with instructions to reinstate the original jury verdict. The balance of the trial court's order is affirmed.

All concur.

2. While it was established during cross-examination that no one described Brewer's conduct in graphic detail to Barrett, we believe Barrett had received enough information to know that Brewer was engaging in inappropriate conduct.