BEN MELTON V. THE STATE.

No. 15314. Delivered March 8, 1933.
Reported in 58 S. W. (2d) 103.

The opinion states the case.

*Baker & Baker* and *Critz & Woodward,* all of Coleman, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Felony theft is the offense; punishment, 3 years in the penitentiary.

Appellant was indicted as a principal for the theft of one thousand feet of ten-inch pipe. The evidence showed that the pipe was worth several hundred dollars. The pipe belonged to the Reiter-Foster Oil Corporation of which one Joe McIntosh had charge, and was taken without their consent or knowledge. It is necessary for us to make a sufficient statement of the evidence to illustrate the point discussed. Appellant was the owner of three trucks. For some time prior to the date of the alleged offense, these trucks were in Longview in the East Texas oil field. The state's witness, W. G. Carriger, was in charge of the trucks, and had supervision thereof to the extent of doing general, as well as contract, hauling. A few days prior to the date of the alleged offense, Carriger received a long-distance telephone call from one Milton Thompson, a nephew of the appellant, directing Carriger to take the trucks to Dallas and there report to the appellant at the Hilton hotel. Carriger testified

that he followed these instructions, and, when he reached Dallas, he went to the Hilton hotel, and there met the appellant, who told him they were going back up near Oplin to get some pipe, to which remark the witness replied, "What you mean, go back up there to get some pipe, what are you trying to do? We are going to get in the penitentiary doing that," to which he testified the appellant replied, "Well, I am paying you and when I send you to get anything you go ahead and don't ask any questions. I have made arrangements for the pipe; I paid for it." The witness Carriger further testified that at the time he knew he was going to steal the pipe. The evidence further showed that together with other parties, Carriger went to Opline out to what was known as the Johnson well, and there loaded about eleven hundred feet of ten-inch pipe on the trucks. He further testified that, before they got to the well from which the pipe was taken, they met Milton Thompson and Andy Craig with two other trucks. After loading the trucks, they went to Dallas, Texas, after traveling approximately a day and a night. When they arrived at Dallas, they parked their trucks near the place of the Indiana Truck Co. and the pipe was carried to the Standard Pipe and Supply Co. and there unloaded, and the appellant was there at the time. The pipe was sold to the said Standard Pipe and Supply Co. by the appellant; that they received at the time of the sale a check for $140, and two days thereafter received a check for the balance of seven hundred dollars. Both of the checks were made payable to W. E. Carter and were endorsed by him.

The young lady who issued the checks did not identify the payee of the checks, and could not testify as to whom the checks were delivered. The witness Carriger said that the appellant got the checks, but there was no other evidence to that effect.

The effect of the testimony of the witness Satterwhite was that he was one of the drivers of the trucks that hauled the pipe. Carriger employed him to do this work, and the appellant accompanied them to the yard where the pipe was sold.

The state offered in evidence the testimony of the witness Craig, who testified that he was one of the drivers of the two trucks. He met the trucks of the appellant near Coleman, and he was driving his own truck, and his employment or connection with the transaction was by virtue of direction on the part of Milton Thompson. He denied that the appellant had ever paid him for making the trip or for the use of his truck.

Appellant, testifying in his own behalf, denied any guilty knowledge or connection with the offense, and denied that he

participated in the sale of the pipe or that he received the checks therefor, and the witness Carriger had charge of his truck and had been doing promiscuous and independent hauling without direction or knowledge on the part of the appellant; that, if he committed the offense by using the appellant's truck, it was without his (appellant's) knowledge or consent.

Appellant advances the contention that his conviction as a principal was unauthorized and not sustained by the evidence, for the reason that the evidence showed that his connection, if any, with the offense was that of an accomplice and not as a principal. The uncontradicted evidence showed that the appellant was not present at the time the pipe was stolen. There was no evidence that appellant was doing anything at the time the offense was committed in aid of the common design. There was no evidence to show that the witness Carriger, who testified that the appellant told him to go get the pipe, was an innocent agent of the appellant, because he himself testified that he knew the pipe was to be stolen at the time he claimed that the appellant told him to take the trucks and get it. We quote from the opinion of Presiding Judge Morrow in the case of Cisneros v. State, 113 Texas Crim. Rep., 352:

"An accomplice is one who is not present at the commission of the offense, but, before the act is done, advises, commands or encourages another to commit the offense, or one who prepares arms or aid of any kind, prior to the commission of an offense, for the purpose of assisting the principal in the execution of the same. Art. 70, P. C., 1925. The prime distinction between a principal and an accomplice, as defined in title 3, chapters 1 and 2, P. C., 1925, is that the law requires a principal to be present at the commission of the offense, while one may be an accomplice without his presence."

We quote from the case of Stringfellow v. State, 14 S. W. (2d) 1031: "The rule has been stated as follows: 'If the defendant on trial was not present when the offense was committed and was doing nothing in aid of the common design when the offense was committed, he would not be a principal although the facts support the theory that he was both an accomplice and accessory, or a receiver of stolen property, or either.' Bean v. State, 17 Texas App., 60; Silvas v. State, 71 Texas Crim. Rep., 213, 159 S. W., 223; Branch's P. C., p. 348."

Among other cases on the subject see Benavides v. State, 85 Texas Crim. Rep., 375; Williams v. State, 82 Texas Crim. Rep., 215; Smith v. State, 102 Texas Crim. Rep., 139; Burow v. State, 85 Texas Crim. Rep., 133; Ross v. State, 286 S. W., 221.

If any offense was committed by the appellant, he is guilty as an accomplice, and under no phase of the evidence do we believe that he could be held as a principal. We think the court erred in not so treating the case and instructing the jury to that effect.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.