# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 11, 2011 Session

## PHILLIP SULLIVAN v. WILSON COUNTY, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 09C934      Joseph P. Binkley, Jr., Judge**

_____

**No. M2011-00217-COA-R3-CV - Filed May 22, 2012**

_____

An employee was terminated by a local power board after a detective sent his employer a letter stating the employee sold narcotic drugs from the truck the employee used during his shift and that the employee admitted selling the drugs. The employee denied selling illegal drugs or making such an admission to the detective, but the administrative law judge in charge of the evidentiary hearing determined the statements in the detective's letter were true. The employee later filed suit against the detective who authored the letter, his supervisors, and the county employing the individual defendants. The former employee asserted causes of action for defamation, negligence, false light invasion of privacy, and intentional infliction of emotional distress. The trial court concluded the former employee was collaterally estopped from relitigating the veracity of the statements in the detective's letter leading to the former employee's termination and dismissed the complaint _in toto_. We affirm. All of the employee's causes of action were based upon statements the detective made in his letter to the employer, which the employee alleged were false. Because the employee is estopped from denying the truth of those statements, he has no basis on which to pursue any of the causes of action set forth in his complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Michelle Blaylock Owens, Michael Clifford Gillespie, Nashville, Tennessee, for the appellant, Phillip Sullivan.

Jeffrey M. Beemer, Kelly Marie Telfeyan, Nashville, Tennessee, for the appellee, Wilson County, Jonathan Daniel, Lane Mullins, and John Edwards.

**OPINION**

Phillip Sullivan worked for Nashville Electric Services ("NES") as a Field Services Technician for about three years when he was terminated in 2008. NES moved to fire Mr. Sullivan after Detective Jonathan Daniel sent a letter to NES suggesting Mr. Sullivan had sold narcotic drugs while he was driving an NES truck during working hours. A hearing was held before an administrative law judge ("ALJ") on October 15, 2008. Mr. Sullivan testified during the hearing and denied ever selling drugs, either from his NES truck or otherwise. Detective Daniel testified Mr. Sullivan admitted he had sold drugs from his NES truck twenty to thirty times over the past year. The ALJ found Detective Daniel to be more credible and recommended that Mr. Sullivan be terminated based on her finding that Mr. Sullivan used an NES vehicle to conduct illegal activities.

NES accepted the recommendation and fired Mr. Sullivan. Mr. Sullivan appealed his termination, and the chancery court affirmed. Mr. Sullivan then filed a lawsuit against Detective Daniel, two of his supervisors, and Wilson County, the employer of the three individual defendants. Mr. Sullivan alleged Mr. Daniel's letter contained defamatory statements and claimed the defendants were liable to him for defamation/libel, negligence, false light invasion of privacy, and intentional infliction of emotional distress. The defendants moved to dismiss Mr. Sullivan's complaint based on collateral estoppel and the Tennessee Governmental Tort Liability Act (the "GTLA"), which the trial court granted. Mr. Sullivan appeals the trial court's dismissal of his complaint, arguing collateral estoppel and the GTLA do not bar the litigation of his claims.

## I. BACKGROUND

### A. ADMINISTRATIVE PROCEEDINGS

On November 19, 2007, a residence located on Cascade Drive in Hermitage was under surveillance by the narcotics division of the Wilson County Sheriff's Department because an individual named Earl Pemberton was allegedly using that residence to sell illegal drugs. Phillip Sullivan drove a truck in his employment with NES as a Field Services Technician. An undercover narcotics agent observed Mr. Sullivan park his truck outside and enter the residence on Cascade Drive while it was under surveillance. Mr. Sullivan was not then under suspicion for illegal drug activity. However, when the narcotics agent observed Mr. Sullivan enter the residence and then leave a short time later, the agent informed the other agents in the area and asked Lane Mullins, who was the Sergeant with the Wilson County Sheriff's Department Narcotics Division, to follow the NES truck Mr. Sullivan was driving. Sergeant Mullins followed Mr. Sullivan's truck to a nearby Wal-Mart where he observed Mr. Sullivan

2

engage in a hand to hand transaction with a woman in the parking lot.

Mr. Sullivan claims the woman he met in the Wal-Mart parking lot was a friend of his who had asked to borrow some money. He alleges he was not aware of any drug activity going on at the Cascade Drive residence. Mr. Sullivan testified that he had sold a car belonging to his wife's grandmother to Mr. Pemberton, an individual he knew spent time at the residence on Cascade Drive, and that Mr. Pemberton owed him a payment on the car. When Mr. Sullivan's friend asked him for a loan, Mr. Sullivan went to the Cascade residence to collect the payment from Mr. Pemberton so he would have the money to lend to his friend. Mr. Sullivan asserted that what appeared to Sergeant Mullins to be a hand to hand drug transaction on November 19 was in fact simply the transfer of cash to his friend.

Mr. Pemberton was later arrested, and the car Mr. Sullivan had sold him was impounded. Mr. Pemberton had not fully paid Mr. Sullivan the amount he owed on the car, and Mr. Sullivan contacted the sheriff's department at the behest of his mother-in-law in an effort to obtain possession of the car.[1]

When Mr. Sullivan called the sheriff's office he spoke with Jonathan Daniel, a detective working in the narcotics division. During their conversation, Detective Daniel learned that Mr. Sullivan was employed by NES and that he drove an NES truck. When Mr. Sullivan explained his interest in the automobile, Detective Daniel invited Mr. Sullivan to come down to meet with him at the station to discuss the situation. Detective Daniel did not then mention to Mr. Sullivan that he suspected Mr. Sullivan was the individual Sergeant Mullins had observed in the Wal-Mart parking lot on November 19, 2007.

When Mr. Sullivan arrived at the sheriff's department, Detective Daniel brought him upstairs to a room used for interviews. Mr. Sullivan and Detective Daniel have conflicting accounts of what occurred while Mr. Sullivan was at the sheriff's department. The ALJ made the following findings of fact concerning this meeting[2]:

> On March 27, 2008, Employee went to the Wilson County Sheriff's Department to discuss ownership of a vehicle that was seized during a narcotics investigation. Two Wilson County Sheriff's Detectives were present at this meeting, Daniels and Detective Jeremy Rich ("Rich"), with Daniels being the head officer on the case, therefore he conducted the meeting and

---

[1]The car was still titled in the name of his mother-in-law.

[2]The ALJ prepared a Report of Findings of Fact and Recommendations following the hearing on October 15, 2008.

3

Rich just listened. Daniels informed the Employee that on November 19, 2007, the Wilson County Sheriff's Department had been conducting a

narcotics surveillance on a residence on Cascade Drive ("Cascade Residence") and that Employee had been observed by several detectives pulling up in an NES truck, parking near the Cascade Residence and entering the Cascade Residence. After Employee spent several minutes in the Cascade Residence, he left and another Wilson County Sheriff's Office detective, Lane Mullins ("Mullins"), followed Employee. Employee was seen stopping in a Walmart parking lot on Andrew Jackson Parkway. In the Walmart parking lot, Employee was seen getting out of the NES truck where he approached a red car with a woman in the driver's seat. Once on the driver's side, a hand to hand exchange occurred. Then the Employee got back into the NES truck and drove away. Detectives followed the woman in the red car, . . . but did not follow Employee. [The woman] was stopped and questioned, but was not arrested or cited by the detectives. At the March 27, 2008 meeting, Daniels questioned Employee extensively about his relationship with [the woman], asking very specific questions regarding the type of relationship the Employee had with [the woman]. Employee denied any type of relationship other than friends that used to work together at a company in Mt. Juliet in the past. Daniels posed a hypothetical similar to the events that occurred November 17, 2008 [sic], and stated that Employee responded that he had purchased pills from Earl Pemberton ("Pemberton") that day and then sold them to [the woman], his only customer, and that he estimated that he had sold pills in his NES truck twenty (20) or thirty (30) times over the course of a year.

Daniels did not arrest Employee, but the statements made by Employee to Daniels that day prompted Daniels to contact NES and submit an affidavit to NES describing the events stated above. This in turn prompted NES to prefer charges for termination of Employee's employment at NES for selling narcotics while he was on duty in an NES vehicle. (Citations to record omitted.)

Despite Mr. Sullivan's testimony that he was giving money to his friend and not selling her any drugs when he was observed in the Wal-Mart parking lot on November 19, 2007, the ALJ found Detective Daniel to be more credible than Mr. Sullivan, explaining:

Employee's post hearing brief states that NES's evidence is speculative and circumstantial. However, Employee failed to refute any of NES's evidence. Neither the testimony of Employee nor the testimony of [the woman

4

friend] was enough to refute any of NES's proof. When having to compare the testimony of a six (6) year experienced narcotic detective that testified the event in the Walmart parking lot looked to his experienced eyes like a drug buy as compared to Employee's testimony at the Administrative Law hearing that he was giving his mistress two hundred ($200) dollars for tags and various other expenses, a woman he denied as his mistress while talking to police detectives some 8 months earlier, more weight must be placed on the testimony of the detective.

In the March 27, 2008 meeting at the Wilson County Sheriff's Office, Employee told Daniels he sold drugs while in the NES truck. But after charges for termination are preferred against Employee, Employee states that (I) Daniels, a seasoned veteran detective, misunderstood the statements he made at the March 27, 2008 meeting; (ii) [the woman friend] is his mistress and the exchange witnessed [by] Mullins, a detective with ten years experience on November 19, 2007 in the Walmart parking lot was Employee giving his mistress two hundred ($200) dollars for car tags, gas and other necessities and not a drug buy; and (iii) Daniels submitted the affidavit to NES in retaliation for Employee failing to provide assistance to Daniels in the Wilson County Sheriff department's quest to "bust" Pemberton. Again, more weight must be placed on the testimony of the detectives since it was evident from their testimony that they had already built a very substantial case against Pemberton through hundreds of hours of surveillance of the Cascade Residence . . . and, which is furthered by the fact that Pemberton was subsequently arrested and indicted for conspiracy to sell drugs and the Cascade Residence was the subject of a police raid where drugs were confiscated. In addition, John Edwards, with 15 years service for the Wilson County Sheriff's department and presently the detective lieutenant over the narcotics division, acted as undercover detective and purchased drugs directly from Pemberton so the case against Pemberton was pretty solid without having to rely on Employee's assistance to build a case against Pemberton. (Citations to record omitted.)

Based on the ALJ's findings of fact, the ALJ recommended that Mr. Sullivan be terminated from his position at NES. The ALJ wrote:

Charges were preferred against Employee because he admitted to Daniels that he sold drugs out of his NES vehicle and he was observed doing so by a seasoned narcotics detective who has witnessed hundreds of drug transactions. Testimony at the Hearing showed that Employee admitted to selling drugs out of his NES vehicle in the March 27, 2008 meeting with Daniels and Rich.

As part of its report and recommendation, the ALJ expressly found (1) Mr. Sullivan sold narcotic drugs from an NES truck while he was on duty and (2) Mr. Sullivan admitted to Detective Daniel that he sold drugs out of his NES vehicle twenty to thirty times over the course of a year.

The Electric Employees' Civil Service and Pension Board of the Metropolitan Government of Nashville and Davidson County adopted the ALJ's Report of Findings of Fact and Recommendation and terminated Mr. Sullivan's employment with NES. Mr. Sullivan appealed the ALJ's report and recommendation to the chancery court, which affirmed the report and recommendation after concluding "substantial material evidence in the record supports the NES Board's decision to terminate Phillip Sullivan." Mr. Sullivan did not appeal the chancery court's judgment, and the judgment became final by May 27, 2010.

## B. SEPARATE LAWSUIT

After the chancery court affirmed the firing of Mr. Sullivan, he filed a complaint against Wilson County, Jonathan Daniel, Lane Mullins, and John Edwards. Mr. Sullivan alleged the statements Detective Daniel made in his letter to NES that led to NES's preferment of charges against him were false. Specifically, Mr. Sullivan takes issue with the following statements Detective Daniel included in his letter:

> Sullivan stated that . . . he did sell a white female ten (10) Lortab pills for $100.00. . . . Sullivan stated that [the white female] is his only customer, and that he does not make a profit from the sales. Detective Daniel asked Sullivan how many times he has sold narcotics in his NES truck. Sullivan estimated twenty to thirty times, but maintained that [the woman] was his only customer. Sullivan stated that he has been selling narcotics to [the woman] for approximately one year. Sullivan said that he sells to [the woman] approximately once a week and that she orders ten to twenty Lortab pills at a time.

Claiming these statements were false, Mr. Sullivan asserted in his Complaint that each of the defendants was liable to him for defamation/libel, false light invasion of privacy, intentional infliction of emotional distress, and negligence. Mr. Sullivan alleged Detective Daniel was negligent in tendering a false statement to Mr. Sullivan's employer and that the other defendants were negligent in their supervision of Detective Daniel. In addition, Mr. Sullivan alleged Wilson County was liable to him for Detective Daniel's actions pursuant to Tenn. Code Ann. § 8-8-302 when Detective Daniel intentionally wrote and tendered a false

6

letter to his employer, NES.[3]

Wilson County filed a motion to dismiss the negligent supervision claim based on Tennessee Code Annotated § 29-20-205, part of the GTLA, which immunizes governmental entities for injuries proximately caused by certain acts by their employees. In ruling on the county's motion to dismiss, the trial court wrote:

> The Court finds that the negligent supervision claim is governed by the Governmental Tort Liability Act. Because the underlying torts allegedly committed by County employees are intentional torts for which Wilson County retains its immunity pursuant to Tenn. Code Ann. § 29-20-205, the Court finds that the Plaintiff cannot pursue a negligent supervision claim against Wilson County.[4]

The three individual defendants filed a motion to dismiss Mr. Sullivan's claims for negligence and false light invasion of privacy. The trial court granted this motion, explaining:

> With respect to the Plaintiff's claim for negligence, the Court finds that Jonathan Daniel, Lane Mullins, and John Edwards are immune from suit pursuant to Tenn. Code Ann. § 29-20-310(b). Tenn. Code Ann. § 29-20-310(b) provides that no claim may be brought against a government employee for damages for which the immunity of the governmental entity is removed.

---

[3]Tenn. Code Ann. § 8-8-302 provides:

Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

[4]Tenn. Code Ann. § 29-20-205 provides in relevant part:

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act of omission of any employee within the scope of his employment except if the injury arises out of:

. . . . .

(2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights.

7

> Because Wilson County's immunity from suit would be removed pursuant to Tenn. Code Ann. § 29-20-205, Jonathan Daniel, Lane Mullins, and John Edwards are immune from suit for negligence under the Tennessee Governmental Tort Liability Act.

> With respect to the Plaintiff's claim for false light invasion of privacy, the Court finds that the Plaintiff cannot pursue this claim against Jonathan Daniel, Lane Mullins, or John Edwards because the Plaintiff has failed to prove that the subject letter was "publicized" as that term is used in the context of the tort of false light invasion of privacy.

Mr. Sullivan filed a motion in limine in which he argued his Fifth Amendment constitutional right against self-incrimination was violated when Detective Daniel failed to give him *Miranda* warnings prior to eliciting his purported admission on March 27, 2008, about selling drugs from the NES truck. As a result, Mr. Sullivan argued, the ALJ erred in refusing Mr. Sullivan the opportunity to testify about Detective Daniel's violation of his rights during the administrative hearing. Although it is not clear from the record, Mr. Sullivan was presumably arguing that because his constitutional rights were violated, his purported admission should not have been admitted at the administrative hearing and he should not be estopped at the trial of his case from presenting evidence concerning the veracity of the statements in Detective Daniel's letter to NES that resulted in his termination. The trial court deferred ruling on this motion in limine to permit the parties to brief the issue.

Wilson County and the individual defendants then filed a motion for summary judgment in which they asked the trial court to dismiss Mr. Sullivan's claims for libel and intentional infliction of emotional distress, as well as the claim against Wilson County for liability pursuant to Tenn. Code Ann. § 8-8-302. The court granted summary judgment on the claim for libel and dismissed that count after concluding the doctrine of collateral estoppel barred Mr. Sullivan from pursuing that claim. The court explained:

> With respect to the Plaintiff's claim for libel, the Court finds that the doctrine of collateral estoppel applies. Pursuant to the Tennessee Court of Appeals' decision in *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563 (Tenn. Ct. App. 1991), it is the law of this State that the doctrines of res judicata and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies. Having determined that the findings and recommendation of the ALJ and the decision of the Board in the

case of *Nashville Electric Service v. Phillip Sullivan*, 08-C-7-41-34-3, Docket No. 08-07, is the type of quasi-judicial determination to which preclusive effect may be given, it must be determined whether the elements of this defense have been established herein.

First, the issue to be decided in the pending litigation, *i.e.*, whether the statements made by Detective Daniel in his letter to NES were true, is identical to the issue that was before the ALJ at the administrative hearing and the Davidson County Chancery Court on appeal. Second, in determining whether the charges preferred against the Plaintiff by NES were substantiated, the truth of the statements made in Detective Daniel's letter to NES was actually raised, litigated, and decided by the ALJ at the administrative hearing and the Davidson County Chancery Court on appeal. Third, on May 27, 2010, thirty days after the entry of the Davidson County Chancery Court's ruling affirming the ALJ's findings and recommendation and the Board's determination, the Chancery Court's judgment became final. Fourth, the Plaintiff was a party to the proceedings before the ALJ and the Chancery Court. Fifth, the Plaintiff had a full and fair opportunity to litigate the truthfulness of the statements made by Detective Daniel in his letter to NES at the evidentiary hearing before the ALJ and before the Chancery Court on appeal.

Because it is a question of law for the Court to determine whether the doctrine of collateral estoppel applies and because all five elements of the doctrine of collateral estoppel are satisfied, the Court hereby finds that the doctrine of collateral estoppel applies to the Plaintiff's claim for libel. Because it has already determined that the statements made in Detective Daniel's letter to NES were true and because truth is an absolute defense to a claim for libel, the Plaintiff's claim for libel is hereby dismissed with prejudice.

The trial court initially declined to dismiss Mr. Sullivan's claim for intentional infliction of emotional distress or the claim against Wilson County for liability pursuant to section 8-8-302, but in a later ruling the court dismissed both of these claims. In the Order dismissing these two claims, the court also addressed Mr. Sullivan's earlier-filed motion in limine concerning the alleged violation of his constitutional right against self-incrimination. In denying Mr. Sullivan's motion in limine, the court wrote:

As an initial matter, the Court finds that the Plaintiff was not subject to a custodial interrogation on March 27, 2008, so as to be entitled to receive *Miranda* warnings. In determining whether an individual is "in custody" for

9

purposes of the United States Supreme Court's decision in *Miranda v. Arizona*, "the relevant inquiry is whether, under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest." *State v. Anderson*, 937 S.W.2d 851, 852 (Tenn. 1996). "The test is objective from the viewpoint of the suspect, and the unarticulated, subjective view of law enforcement officials that the individual being questioned is or is not a suspect does not bear upon the question." *Id*. at 852.

In concluding that the Plaintiff was not "in custody," the Court makes the following findings. First, the Plaintiff voluntarily initiated contact with the Wilson County Sheriff's Department to discuss recovering a vehicle that belonged to his wife's grandmother, which was seized from Earl Pemberton during the course of a drug arrest. Second, the Plaintiff went to the Wilson County Sheriff's Department voluntarily and of his own free will. Third, the Plaintiff was advised by Detective Daniel and Detective Reich, during the course of the interview, that he was there voluntarily and was free to leave at any time. Fourth, the door to the interview room was left open at all times and neither Detective Daniel nor Detective Reich blocked the Plaintiff's pathway to the door. Fifth, at the conclusion of the interview, the Plaintiff left the Wilson County Sheriff's Department without hindrance. The fact that the Plaintiff was escorted from the building is of no consequence as it was the standard practice and procedure for visitors of the Sheriff's Department to be escorted in, around, and out of the building.

Supporting the Court's finding that the Plaintiff was not subject to a custodial interrogation is the United States Supreme Court's decision in *California v. Beheler*, which recognized that "Miranda warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'" 463 U.S. 1121, 1125 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). Also, having concluded that the Plaintiff was not "in custody" when he admitted to selling narcotics out of his NES truck, the Court finds, in accord with the United States Supreme Court's decisions in *Beheler* and *Mathiason*, that the Plaintiff's admissions were "not tainted by the failure to give the *Miranda* warnings." *State v. Blackburn*, 1991 Tenn. Crim. App. LEXIS 279, at *5 (Tenn. Crim. App. Apr. 10, 1991).

Moreover, relying on the United States Supreme Court's decision in *Chavez v. Martinez* "that a violation of the constitutional right against self-

10

incrimination occurs only if one has been compelled to be a witness against himself in a criminal case," 538 U.S. 760, 770 (2003), the Court finds that the Plaintiff cannot assert that his Fifth Amendment right against self-incrimination has been violated because he has not been charged with a crime or compelled to be a witness against himself in a criminal proceeding.

After addressing Mr. Sullivan's motion in limine, the trial court modified its earlier Order denying the defendants' motion to dismiss the claim for intentional infliction of emotional distress and the claim against Wilson County for liability pursuant to section 8-8-302. The court wrote:

> It is for the Court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Lane v. Becker*, 2010 Tenn. App. LEXIS 145, at *14 (Tenn. Ct. App. Feb. 25, 2010) (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. h). The Court finds that the Plaintiff's claim for intentional infliction of emotional distress must be dismissed as to Defendant Jonathan Daniel. Having previously determined that the doctrine of collateral estoppel bars the Plaintiff from relitigating whether the statements made by Detective Daniel in his letter to NES were true and having now determined that the doctrine of collateral estoppel likewise precludes the Plaintiff from relitigating the veracity of the admissions he made to Detective Daniel on March 27, 2008, the Court concludes that there is no genuine issue of material fact as to whether Detective Daniel's conduct in sending the letter to NES rose to the level of extreme and outrageous conduct. Having found that no claim for intentional infliction of emotional distress will lie against Detective Daniel, the Court likewise dismisses the Plaintiff's claim for intentional infliction of emotional distress as to Defendant Lane Mullins and Defendant John Edwards, who were only named as Defendants in this case as a result of their supervisory roles.

> Finally, because all claims as to Defendants Jonathan Daniel, Lane Mullins, and John Edwards have been dismissed, the Plaintiff's claim against Wilson County for violation of Tenn. Code Ann. § 8-8-302 is likewise dismissed.

Mr. Sullivan appeals from the trial court orders dismissing his claims against the defendants.

### III. ISSUES ON APPEAL

11

Mr. Sullivan argues on appeal that the trial court erred in dismissing his claims. He asserts that collateral estoppel does not apply to the administrative hearing and does not prevent his litigation of the claims set forth in his complaint. Mr. Sullivan also argues the trial court erred in holding Detective Daniel did not violate his constitutional rights when he failed to give Mr. Sullivan *Miranda* warnings because he was subjected to a custodial interrogation.

## IV. STANDARD OF REVIEW

The trial court dismissed some of Mr. Sullivan's claims pursuant to a motion to dismiss and other claims pursuant to a motion for summary judgment. A Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint itself. *Willis v. Dept. of Corrections*, 113 S.W.3d 706, 710 (Tenn. 2003); *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). The trial court should grant a motion to dismiss only "when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Willis*, 113 S.W.3d at 710. On appeal from an order granting a Tenn. R. Civ. P. 12.02(6) motion this court must, like the trial court, presume that the factual allegations in the complaint are true. We must review the trial court's legal conclusions regarding the adequacy of the complaint *de novo*, without a presumption of correctness. *Willis*, 113 S.W.3d at 710; *Fahrner v. SW Mfg.*, 48 S.W.3d 141, 144 (Tenn. 2001); *421 Corp. v. Metro. Gov't of Nashville and Davidson County*, 36 S.W.3d 469, 479-80 (Tenn. Ct. App. 2000).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Id.* Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). Those requirements are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764.

## V. COLLATERAL ESTOPPEL BARS RELITIGATING ISSUES THE ALJ DECIDED.

Collateral estoppel is a judicially created doctrine that bars a party from relitigating in a later proceeding legal or factual issues that were raised and necessarily determined in an earlier proceeding. *Mullins v. State*, 294 S.W.3d 529, 534 (Tenn. 2009) (citing *Barnett v. Milan Seating Sys.*, 215 S.W.3d 828, 835 (Tenn. 2007), *Massengill v. Scott*, 738 S.W.2d 629,

631-32 (Tenn. 1987), and *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000)). To prevail on a claim of collateral estoppel the party asserting it must show:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Mullins*, 297 S.W.3d at 535, (citing *Gibson v. Trant*, 58 S.W.2d 103, 118 (Tenn. 2001) (Birch, J., concurring and dissenting)).

We first note that in Tennessee the law is clear that "[t]he doctrines of *res judicata* and collateral estoppel are applicable to give conclusive effect to quasi-judicial determinations of administrative agencies." *Morris v. Esmark Apparel*, 832 S.W.2d 563, 566 (Tenn. App. Ct. 1991); *see Mangrum v. Wal-Mart Stores*, 950 S.W.2d 33, 36 (Tenn. Ct. App. 1997) (recognizing that *Morris v. Esmark Apparel* established the rule in Tennessee that collateral estoppel doctrine applies to give conclusive effect to quasi-judicial administrative decisions if requirements of collateral estoppel are met). So long as the "administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," Tennessee courts give the agency's determination the same preclusive effect as they would if the agency had been a court of law. Morris, 832 S.W.2d at 566 (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) and *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986)).

*Morris v. Esmark Apparel* was the first case in Tennessee to determine that collateral estoppel applies to administrative decisions. While the parties to the administrative hearing and the subsequent lawsuit were the same in *Morris*, 832 S.W.2d at 564, the parties are not the same in the case at bar. The administrative hearing concerned Mr. Sullivan's termination of employment with NES and the parties included only NES and Phillip Sullivan. The case at bar is related to the administrative hearing and was filed as a result of the administrative hearing's outcome, but the two proceedings do not share a "mutuality of parties." None of the current defendants was a party in the hearing before the ALJ.

Several cases in Tennessee have discussed whether collateral estoppel should apply in situations where there is not a mutuality of the parties in the two proceedings under consideration. Justice Koch addressed this issue in the case *Beaty v. McGraw*, 15 S.W.3d

13

819 (Tenn. Ct. App. 1998):

> At common law, the collateral estoppel doctrine required mutuality of the parties and could only be used defensively. Thus, a defendant traditionally employed the doctrine to prevent a plaintiff from relitigating a claim that the plaintiff has previously litigated against the defendant and lost. The United States Supreme Court expanded the application of the collateral estoppel doctrine in federal courts when it discarded the common-law mutuality of parties requirement. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-33 (1979).

*Id*. at 825.

In this case, the defendants are asserting that Mr. Sullivan, the plaintiff, is precluded from relitigating the issues of whether he admitted selling narcotics from the NES truck during working hours and whether his admission to Detective Daniel was truthful or not. This type of collateral estoppel is commonly referred to as "defensive" collateral estoppel, because the defendants are asserting the doctrine against the plaintiff.

Offensive collateral estoppel occurs when a plaintiff seeks to preclude a defendant from relitigating an issue the defendant did not succeed on in an earlier proceeding. *Beaty*, 15 S.W.3d at 825. While offensive collateral estoppel still requires mutuality of the parties in Tennessee, defensive collateral estoppel does not require the parties to be identical in the two proceedings. *Trinity Indus. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 185 (Tenn. Ct. App. 2001); *Beaty*, 15 S.W.3d at 825. As the court explained in *Phillips v. General Motors Corp.*, 669 S.W.2d 665 (Tenn. Ct. App. 1984), so long as the defendant in the later proceeding is in the same position to the plaintiff as the adverse party was in the earlier proceeding vis à vis the issue to be precluded, which the court described as privity, collateral estoppel is available to the defendant in the later proceeding so long as the defendant can satisfy the five requisite elements of collateral estoppel. *Id*. at 669. Therefore, since the individual defendants and Wilson County are in privity with NES with respect to whether Mr. Sullivan sold narcotics from an NES truck and whether Mr. Sullivan made an admission to Detective Daniel, the doctrine of collateral estoppel is available to the individual defendants and Wilson County.

The question whether collateral estoppel applies to a particular set of facts is a question of law. *Mullins*, 294 S.W.3d at 535 (citing *Morris v. Esmark Apparel*, 832 S.W.2d 563, 566 (Tenn. Ct. App. 1991)). Therefore, courts reviewing a trial court's decision to dismiss a complaint on the basis of collateral estoppel must review the record *de novo* without a presumption of correctness. *Mullins*, 294 S.W.3d at 535.

14

Mr. Sullivan argues collateral estoppel does not apply to the administrative hearing herein because the issue before the ALJ was not identical to the issue the trial court ruled was precluded. Second, he contends he did not have a full and fair opportunity to contest the veracity of the statements in Detective Daniel's letter to NES or whether he had admitted selling narcotics during his interview with Detective Daniel on March 27, 2008. Finally, he claims the issue precluded was not previously raised, litigated, and decided on the merits before the ALJ. Mr. Sullivan does not contest the finality of the chancery court's judgment affirming the Board's termination of his employment or that he was a party to the earlier proceeding.

### A. The Issue Before The ALJ Was Identical To The Issue The Trial Court Has Ruled Is Precluded.

The issues determined by the ALJ must be identical to the issues in the instant lawsuit for collateral estoppel to come into play and prevent Mr. Sullivan from litigating his claims. Mr. Sullivan's libel/defamation claims form the basis of his complaint against Wilson County and the individual defendants. "To establish a prima facie case of defamation, the plaintiff must prove that (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001) (citing *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn.1999) (relying on RESTATEMENT (SECOND) OF TORTS § 580 B (1977)).

Truth is an absolute defense to a claim for defamation when the otherwise defamatory meaning of the words used turns out to be true. *Memphis Pub. Co. v. Nichols*, 569 S.W.2d 412, 420 (Tenn. 1978); *accord Carroll v. Times Printing Co.*, 1987 WL 10332, at *1 (Tenn. Ct. App. May 5, 1987). As the Tennessee Court of Appeals explained in *Stones River Motors v. Mid-South Pub. Co.*, 651 S.W.2d 713, 719 (Tenn. Ct. App. 1983):

> The damaging words must be factually false. If they are true, or essentially true, they are not actionable, even though the published statement contains other inaccuracies which are not damaging. Thus, the defense of truth applies so long as the "sting" (or injurious part) of the statement is true.

The statements Detective Daniel made that Mr. Sullivan relies upon for his defamation claim are that Mr. Sullivan sold narcotic drugs from an NES truck during his shift and that he admitted selling narcotics from the NES truck twenty to thirty times over the course of a year. The issue before the ALJ was whether the charges NES preferred against Mr. Sullivan were substantiated so to justify the termination of his employment with NES. The basis for

15

NES's decision to prefer charges against Mr. Sullivan was the letter it received from Detective Daniel describing Mr. Sullivan's sale of narcotic drugs from the NES truck during working hours and his subsequent admission. Thus, the truth of Detective Daniel's statements was at the heart of the issues before the ALJ. Accordingly, we conclude that the issue that was before the ALJ is identical to the issue the trial court has ruled is precluded in this case.

**B. Mr. Sullivan Had A Full and Fair Opportunity To Litigate The Issues Before The ALJ**.

Detectives Daniel and Rich both testified at the ALJ hearing about the statements Mr. Sullivan made at the station on March 27, 2008. Detective Daniel testified that Mr. Sullivan admitted during the interview that Mr. Pemberton had given him ten narcotic pills on November 19, 2007, and that he had given them to his friend at Wal-Mart in exchange for $100. Detective Daniel also testified that Mr. Sullivan told him he had sold pills from his NES truck twenty to thirty times over the preceding year. Detective Rich confirmed that Mr. Sullivan admitted selling drugs from the NES truck when he was at the Wilson County Sheriff's Department on March 27, 2008. Mr. Sullivan's attorney vigorously cross-examined both Detective Daniel and Detective Rich about their testimony.

Mr. Sullivan testified at length. He repeatedly denied that he ever sold drugs, either from the NES truck or otherwise. He also denied being aware that Mr. Pemberton was involved in illegal drug activity. Further, he denied making any statement to Detective Daniel in which he admitted selling any illegal drugs. He had ample opportunity at the hearing to explain the purpose of his meeting at the Wal-Mart parking lot, and he testified unequivocally that he lent his friend $200 and did not transfer any drugs to her. Finally, Mr. Sullivan's attorney went through the letter Detective Daniel sent to NES line by line with Mr. Sullivan at the hearing before the ALJ, and Mr. Sullivan had the opportunity to admit or deny each statement Detective Daniel included in the letter he sent to NES.

Based on our review of the transcript of the hearing before the ALJ, we conclude Mr. Sullivan had a full and fair opportunity at the ALJ hearing to contest the issues the trial court has ruled are precluded.

**C. The Issues To Be Precluded Were Actually Raised, Litigated, And Decided On The Merits In The Earlier Proceeding**.

Following the close of evidence at the hearing before the ALJ, the ALJ made findings of fact, as described above. The ALJ acknowledged the conflicting testimony and explained that she found Detective Daniel's testimony to be more credible than Mr. Sullivan's. The

16

ALJ expressly found that Mr. Sullivan sold narcotic drugs from an NES truck while he was working and that Mr. Sullivan had admitted selling narcotic drugs to Detective Daniel on March 27, 2008, during his interview at the Wilson County Sheriff's Department. In other words, the ALJ ultimately ruled that the statements Mr. Sullivan claims are defamatory were in fact true. We thus conclude that the issue the trial court has ruled is precluded was in fact previously raised, litigated, and decided on the merits by the ALJ.

Mr. Sullivan appealed the Board's decision based on the ALJ's report and recommendation, and the chancery court affirmed it by Order on April 21, 2010. Mr. Sullivan did not appeal that Order, which became final thirty days later. Having determined that all five elements of collateral estoppel have been established, we hereby affirm the trial court's Order that collateral estoppel applies and precludes Mr. Sullivan from relitigating whether or not he sold narcotics from an NES truck on November 19, 2007, or whether he admitted selling narcotics from an NES truck when he met with Detective Daniel at the Wilson County Sheriff's Department on March 27, 2008. Since Detective Daniel's statements form the basis of Mr. Sullivan's defamation/libel claim, we affirm the trial court's judgment dismissing this claim.

## VI. REMAINING CLAIMS

Mr. Sullivan claims he was subjected to a custodial interrogation when he was interviewed in March 2008 without being informed of his right to remain silent, his right to an attorney, and his right to avoid self-incrimination as guaranteed by the Fifth Amendment of the United States Constitution. The trial court addressed this issue thoroughly in its Order denying Mr. Sullivan's motion in limine. We agree with the trial court's analysis of this issue, which is quoted in full above, and affirm its conclusion that Mr. Sullivan was not subjected to a custodial interrogation when he voluntarily went down to meet with Detective Daniel at the Wilson County Sheriff's Department on March 27, 2008. Therefore, we hold that his constitutional rights were not violated and the ALJ did not err in permitting Mr. Sullivan's admission to be introduced into evidence.

The trial court dismissed Mr. Sullivan's defamation/libel claim after concluding that the doctrine of collateral estoppel precluded him from relitigating the truthfulness of the statements Detective Daniel made in his letter. The trial court then dismissed the remaining claims Mr. Sullivan asserted in his Complaint based on different provisions of the GTLA. A review of Mr. Sullivan's Complaint shows that each count is based on what Mr. Sullivan characterizes as the false statements Detective Daniel made in his letter to NES. Because Mr. Sullivan is collaterally estopped from litigating the truthfulness of the statements Detective Daniel made in the letter to NES that resulted in his termination, the remainder of his claims collapse like a house of cards because he has nothing left to support them. Mr. Sullivan has

17

no basis upon which to argue the defendants were negligent or that they are liable for false light invasion of privacy or the intentional infliction of emotional distress. Moreover, Mr. Sullivan has no basis on which to argue Wilson County is liable to him for damages under Tenn. Code Ann. § 8-8-302 because he is precluded from asserting Detective Daniel tendered a false letter to his employer.[5] Accordingly, we hold that the trial court properly dismissed Mr. Sullivan's claims against all of the defendants. All other issues are pretermitted.

---

[5]We have no reason and therefore decline to address whether the GTLA provides an additional basis to justify dismissing Mr. Sullivan's causes of action.

## VII. CONCLUSION

For the foregoing reasons, we affirm the trial court's dismissal of Mr. Sullivan's complaint with prejudice. Costs of this appeal shall be taxed to the appellant, Phillip Sullivan, for which execution shall issue, if necessary.

_____
PATRICIA J. COTTRELL, JUDGE