NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0339n.06

No. 23-5713

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 01, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| JESSICA CHILDERS, | ) | |
| Plaintiff - Appellant, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| v. | ) | |
| CASEY COUNTY SCHOOL DISTRICT BOARD OF EDUCATION, et al., | ) | |
| Defendants - Appellees. | ) | OPINION |

Before: GIBBONS, BUSH, and LARSEN, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Jessica Childers required a private space and dedicated time to pump breastmilk after she returned from maternity leave. Administrators at her school challenged some of her desired accommodations. After Childers received a poor evaluation and faltered in some of her assigned tasks, the Casey County School District declined to renew her employment contract. She sued those administrators and the District, alleging that they discriminated against her, retaliated against her, created a hostile work environment, and intentionally inflicted emotional distress on her. The district court, however, granted summary judgment for defendants on all issues. We affirm.

**I**

Childers, a special education teacher, took ten weeks of maternity leave after giving birth to her son. As she prepared to return to the classroom, she worked with her supervisor, Principal Daran Wall, to identify a space where she could pump breastmilk for her baby. They settled on

her classroom, which had "a chair, a table, a plug in, and a door that locked . . . from the inside, and [where she could] put a cover over the window" on the door. Childers Dep., R. 18-2, PageID 109.

Childers returned from maternity leave in October 2020. On October 7, Barry Lee, the school's special education director, met with all special education teachers to discuss schedules. Childers proposed a schedule that included two thirty-minute periods of personal time, a sixty-minute planning period, and a twenty-minute lunch period. According to Childers's testimony, Lee questioned the purpose of personal times Childers listed in her schedule; when she explained that she set these periods to pump breastmilk, Lee "got very loud, and he got very angry, and he smacked the paper on the table, and he told me, this wasn't going to work" because "[t]here's no way he's going to pay [her not] to see kids and—he's not going to pay [her] to do nothing." *Id.* at PageID 115. After the meeting, Lee and Wall met privately with Childers, and Lee explained that "he was concerned because of the large amount of time (2.5 hours per day) on [Childers's] daily schedule that she was not with students" and that Childers needed "to maximize instruction time with students." Wall Resps. To Pl.'s Interrog. Reqs., R. 18-3, PageID 163. Lee also inquired as to whether any adjustments could be made to ensure [Childers] was supporting her students." *Id.*

On October 8, Childers, Lee, and another school employee met to discuss how long Childers needed to pump: Childers testified that Lee directed her to shorten her pumping sessions to twenty minutes, which he concluded was an appropriate amount of time based on his conversations with others, and cut her planning period by thirty minutes to compensate for time not seeing students. But Wall never asked her to reduce the number of pumping sessions. And Childers never actually reduced her pump sessions, in either the personal times or her planning period.

Over the course of the school year, someone entered Childers's classroom while she pumped three times. And the cover on her classroom door was once removed on January 7, 2021. The next day, Wall sent an email asking staff to remove door covers as part of a district-wide safety audit. Childers did not remove her window cover. Wall later asked her in person to remove the cover as part of that audit, but Childers continued to keep hers up.

A new child joined the special education department while Childers took maternity leave. Once she returned to school, Childers was responsible for verifying that the new student's paperwork complied with standards to secure federal funding for the child's education. Although she identified that the child's paperwork was not completed while she was on leave, Childers failed to timely submit a verification form for the child, resulting in a loss of federal funding.

Wall advised teachers on what to include in a binder as part of his evaluation of their performance, but teachers chose what specific documents would be considered. During his evaluation of Childers, Wall rated her as "Developing," rather than "Accomplished." Childers explained why she disagreed with this evaluation and appealed it to a committee that reviewed teacher evaluations, but this committee ultimately upheld her evaluation. Childers was a contract, not tenured, teacher, and ultimately the District declined to renew her contract in 2021.

Childers sued the District, Lee, and Wall, asserting discrimination, retaliation, hostile work environment, outrageous conduct, and gross negligence claims against them. The parties cross-moved for summary judgment—defendants on all issues and Childers on liability. The district court granted defendants' motion for summary judgment and denied Childers's partial motion for summary judgment. Childers timely appealed.

**II**

We review a grant of summary judgment de novo. *Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In this analysis, the court "must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018) (citing *Anderson*, 477 U.S. at 251–52, 255).

**III**

A. Title IX and Kentucky Civil Rights (KCRA) Claims

Childers appeals the district court's grant of summary judgment for defendants on her claims brought under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* and the KCRA, Ky. Rev. Stat. Ann. § 344.040 *et seq.* Title IX and KCRA make similar mistreatment unlawful. Title IX states that, subject to exceptions inapplicable here, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The KCRA makes it unlawful to "fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . sex." Ky. Rev. Stat. § 344.040(1)(a). The parties do not dispute that discrimination based on pregnancy-related conditions violates the substantive provisions of both statutes.

In appropriate cases, we have evaluated Title IX claims by borrowing the analytic framework used in analogous Title VII cases. *See Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 251 (6th Cir. 2023) (applying the Title VII retaliation framework to a Title IX retaliation claim). *But see Bose v. Bea*, 947 F.3d 983, 989 (6th Cir. 2020) (declining to apply Title VII's "cat's paw" theory to a Title IX claim). We accept the parties' invitation to apply Title VII's basic framework, as appropriate, here. We emphasize, however, that "Title VII differs from Title IX in important respects." *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021). "Thus, it does not follow that principles announced in the Title VII context automatically apply in the Title IX context." *Id.*

Childers argues that the district court erroneously granted summary judgment on her claims that Wall, Lee, and the District discriminated against her, retaliated against her, and created a hostile work environment contrary to Title IX and the KCRA.[1] We discuss each category of claims in turn.

### 1. Discrimination and Retaliation Claims

Childers argues that direct evidence supports her discrimination claims, but not her retaliation claims. Childers may prevail on her sex discrimination claims by showing direct evidence of discriminatory intent. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 238 (6th Cir. 2005). "Direct evidence is evidence that 'requires no inferences or circumstantial evidence to

---

[1] Childers asserted Title IX and KCRA claims against Wall and Lee individually, as well as the District. Title IX limits liability to the funding recipient (here, the District), not individuals, so the district court properly dismissed the Title IX claims against Wall and Lee. *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020). But while Kentucky courts interpret the KCRA's civil rights provisions "in both the discrimination and retaliation contexts, consistent with the analogous federal anti-discrimination statutes," *Charalambakis v. Asbury Univ.*, 488 S.W.3d 568, 575 (Ky. 2016), the KCRA "plainly permits the imposition of liability on individuals" for retaliation claims under Ky. Rev. Stat. § 344.3800. *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 794 (6th Cir. 2000); *accord Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 F. App'x 624, 630 (6th Cir. 2013). Because Childers brought her KCRA retaliation claims under Ky. Rev. Stat. § 344.3800, the district court properly assessed these state law retaliation claims against Wall and Lee on the merits rather than dismissing them based on individual liability.

create an inference of discrimination.'" *Hunter v. Gen. Motors LLC*, 807 F. App'x 540, 543 (6th Cir. 2020) (quoting *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018)). Childers contends that she has shown direct evidence of discrimination by Wall and Lee by testifying that (1) her window covering was removed from her classroom, (2) Lee and Wall constantly demanded that she shorten her pumping periods, and (3) Lee reacted emotionally in public when he challenged the purpose of her proposed schedule's personal periods. But, as the district court correctly noted, these "actions require the Court to draw inferences as to whether they reflect a bias against women with pregnancy-related conditions, however, and whether this purported bias prompted her termination." *Childers v. Casey Cnty. Sch. Dist. Bd. of Educ.*, No. 1:21-CV-00138-GNS-HBB, 2023 WL 4629555, at *3 (W.D. Ky. July 19, 2023). So Childers fails to establish her discrimination claims based on direct evidence.[2]

Without direct evidence, Childers's Title IX and KCRA claims may nonetheless proceed by showing circumstantial evidence of discrimination or retaliation under the framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *White*, 429 F.3d at 238 (discrimination); *Goldblum*, 62 F.4th at 251 (retaliation). Under that framework, Childers "bears the burden of establishing a prima facie claim of discrimination." *White*, 429 F.3d at 238; *accord Goldblum*, 62 F.4th at 251. Once she establishes that prima facie case, "the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the employment decision at issue,"

---

[2] Unlike Title VII, which holds an "employer" accountable for the actions of its agents, there is no *respondeat superior* liability under Title IX. *Bose*, 947 F.3d at 989–90. Instead, Title IX imposes liability "only for a funding recipient's 'own official decision[s]' and not 'for its employees' independent actions.'" *Id.* at 990 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91 (1998)). So, it is unclear whether Wall's and Lee's statements would constitute "direct" evidence of the District's intent in any event. But we need not resolve that question here.

which Childers may then rebut with evidence that "the defendant's stated reason is mere pretext for its true discriminatory motives." *White*, 429 F.3d at 238; *accord Goldblum*, 62 F.4th at 251.

Defendants contend that the District possessed a legitimate, non-discriminatory, and non-retaliatory reason for declining to renew Childers's contract: her poor performance in a non-tenured position, shown by her less-than-stellar evaluation and her failure to properly document the new student in the special education department, which led to lost federal funding to the District.[3] "Poor performance is a legitimate, nondiscriminatory reason for terminating a person's employment," so logically, poor performance is also a legitimate, nondiscriminatory reason to decline to renew a non-tenured employee's contract. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008).

Thus, the real issue here is whether that reason was pretext for defendants' discriminatory and retaliatory intent, as Childers argues at the third *McDonnell Douglas* stage. A plaintiff shows such intent by offering a "cognizable explanation of how the evidence she has put forth establishes pretext." *Goldblum*, 62 F.4th at 252 (quoting *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020)) (applying this standard to retaliation claims). "Plaintiffs typically show pretext," however, "by establishing one of three things: '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that [the proffered reasons] were insufficient to motivate the employer's action.'" *Id.* (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).

---

[3] We move past the prima facie case stage; because defendants offered a legitimate, non-discriminatory, and non-retaliatory reason for declining to renew Childers's contract, we may assume, without deciding, that she made a prima facie case and proceed to the "ultimate issue" of whether that reason was pretextual. *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

Childers offers several reasons why her non-renewal was pretextual, though none is persuasive. First, she blames others for failing to document the new special education student while she was on maternity leave, and says that she caught the mistake. Yet she acknowledges that documenting students for this purpose was ultimately her responsibility, that she participated in meetings before the paperwork deadline in which this issue was discussed, but that she still submitted the forms late. Even if she caught the mistake, she did not correct it. Having failed her known duties, Childers has not shown that defendants acted pretextually when the District did not renew her contract.

Second, she contends that defendants' reason disguised their unlawful motivations, explaining that Lee reacted emotionally when he questioned the purpose of her taking personal time and criticized her proposed schedule. Yet Childers has not offered evidence that Lee even played a role in the decision not to renew her contract. In any event, Lee's alleged outburst preceded the District's non-renewal decision by six months, and his comments came in the context of evaluating Childers's schedule for the upcoming year. Considered in light of the strength of the District's performance-based reasons for not renewing Childers's contract, no reasonable juror could conclude that the District's decision was pretextual based on Lee's alleged outburst.

Finally, she argues that, in her final evaluation, Wall improperly rated her poorly, in part by holding her to a different standard than other teachers, to legitimize her non-renewal. Although she complained, for example, that Wall did not specifically tell her that he wanted examples of student work in her evaluation binder, Childers also testified that the Principal gave guidelines of what teachers should include and that teachers themselves selected what went in that binder. And when Childers appealed her negative rating to a committee charged with reviewing teacher evaluations, that committee affirmed Wall's assessment. At bottom, Childers has not presented

evidence that discriminatory or retaliatory animus motivated Wall's rating or its affirmance by the appeals committee, or that the District's reliance on the evaluation was otherwise pretextual. And so her Title IX and KCRA discrimination and retaliation claims must fail.

### 2. *Hostile Work Environment Claims*

To prevail on her hostile work environment claims based on sex, Childers must establish that "(1) she was a member of a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on sex; (4) the harassment created a hostile work environment; and (5) employer liability." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 411 (6th Cir. 2021) (internal quotation marks, alterations, and citations omitted) (Title VII sex-based hostile work environment claim); *see Doe v. Miami Univ.*, 882 F.3d 579, 590 (6th Cir. 2018) ("A Title IX hostile-environment claim is analogous to a Title VII hostile-environment claim.").[4] "Harassment creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Wyatt*, 999 F.3d at 411 (cleaned up). Whether conduct rises to that level is assessed considering "all the circumstances," and courts may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

---

[4] Like the district court, Childers and defendants apply this Title VII framework to Childers's hostile work environment claims, both under Title IX and the KCRA. But unlike Title VII, an employer can be sued under Title IX only for its own actions, not for those of its employees. *Bose*, 947 F.3d at 989–90. As applied to the hostile work environment claim, that means that the District can be liable only "if it received actual notice of [the] harassment and responded to it with 'deliberate indifference.'" *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 511 (6th Cir. 2001) (quoting *Gebser*, 524 U.S. at 292). Here, the parties have not engaged the question whether the District itself received "actual notice" of these events and responded with "deliberate indifference" to them. *Id.* at 510. And we resolve the case on other grounds.

Here and below, the parties primarily dispute the fourth element of the above test: whether defendants' harassment created a hostile work environment for Childers. Childers points to several ways in which she believes defendants harassed her to that level: Lee instructed her to reduce her pumping sessions to twenty minutes, Lee questioned the purpose of her personal periods in her draft schedule, someone once removed the covering on her door, some people entered her classroom while she pumped, and Lee stated that her schedule "wasn't going to work" because "[t]here's no way he's going to pay [her not] to see kids and—he's not going to pay [her] to do nothing." Childers Dep., R. 18-2, PageID 115.

Viewing the evidence in the light most favorable to Childers, the defendants' alleged conduct objectively cannot amount to a "hostile work environment." Childers recounted three intrusions in her classroom while she pumped during the six-month period at issue: janitors entered the room twice and Wall did so once. While we are sympathetic to Childers's privacy concerns, these episodes are insufficient to raise an actionable hostile work environment claim. Childers acknowledged that she did not think that the janitors entered her classroom purposefully, which diminishes the severity of the intrusions. *Cf. Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 501 (6th Cir. 2009) (noting the diminished severity, for purposes of a hostile work environment claim, of workplace slurs that the plaintiff overheard but that were not directed at her). The infrequency of the privacy violations, including the alleged removal of her window cover, demonstrates that Childers's allegations are the types of "isolated incidents" that are legally insufficient to state a hostile work environment claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). And Lee's challenges to and frustrations with her draft schedule were not frequent, severe, physically threatening, or humiliating; at most, they constituted "mere offensive utterance[s]."

*Harris*, 510 U.S. at 23. So Childers's Title IX and KCRA hostile work environment claims fail. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787, 790 (6th Cir. 2000).

### B. Other Claims

Childers also appeals the district court's grant of summary judgment to defendants on her outrageous conduct claim. To prevail on this tort, also known as intentional infliction of emotional distress, a plaintiff must establish that the "defendant's conduct was intentional or reckless, that the conduct was so outrageous and intolerable so as to offend generally accepted standards of morality and decency, that a causal connection exists between the conduct complained of and the distress suffered, and that the resulting emotional stress was severe." *Brewer v. Hillard*, 15 S.W.3d 1, 6 (Ky. Ct. App. 1999). "An action for outrage will not lie for petty insults, unkind words and minor indignities; the action only lies for conduct which is truly outrageous and intolerable." *Id.* (cleaned up). Childers raises the same facts for this claim as she raised for her hostile work environment claims. As before, though, these facts do not rise to the level of outrageous and intolerable conduct necessary to assert this claim, which also fails. *See Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 4 (Ky. 1990).

Finally, Childers also appeals the district court's grant of summary judgment to defendants on her gross negligence claim, asserted so that she may pursue punitive damages. But punitive damages are not authorized for her Title IX or KCRA claims. *Barnes v. Gorman*, 536 U.S. 181, 185–89 (2002) (rejecting the availability of punitive damages in private suits brought under legislation passed pursuant to the U.S. Constitution's Spending Clause, like Title IX); *Kentucky Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 140 (Ky. 2003) (recognizing that the statute setting civil remedies for violating the KCRA does not authorize punitive damages). And while punitive damages are generally available for an outrageous conduct claim, *Kroger Co. v. Willgruber*, 920

S.W.2d 61, 67 (Ky. 1996), Childers may not recover such damages because that claim fails on the merits, as discussed above.  *Ammon v. Welty*, 113 S.W.3d 185, 188 (Ky. Ct. App. 2002).

**IV**

For these reasons, we affirm the district court's grant of summary judgment for defendants and against Childers on all issues.